**BABY NEAL, et al., Plaintiffs,**

v.

**Robert P. CASEY, et al., Defendants.**

**Civ. A. No. 90–2343.**

United States District Court, E.D. Pennsylvania.

April 13, 1993.

Order Vacating in Part April 22, 1993.

---

Mary E. Kohart, Stephen P. Chawaga, Drinker, Biddle & Reath, Lawrence J. Fox, Stefan Presser, Philadelphia, PA, Marcia R. Lowry, American Civ. Liberties Union Foundation, Michael Mushlin, American Civ. Liberties Union, Children's Rights Project, New York City, E. Graham Robb, Drinker, Biddle & Reath, Paul H. Saint–Antoine, Philadelphia, PA, Robin L. Dahlberg, American Civ. Liberties Union, Children's Rights Project, Ann A. Wooldridge, New York City, for plaintiffs.

Marianne E. Brown, Schnader, Harrison, Segal & Lewis, Jerome J. Shestack and Dana B. Klinges, Wolf, Block, Schorr and Solis Cohen, Philadelphia, PA, for Robert P. Casey and John F. White, Jr.

A. Taylor Williams, Administrative Office of Pa. Courts, Philadelphia, PA, for Edward J. Bradley.

Robert G. Schwartz, Juvenile Law Center, Philadelphia, PA, for Juvenile Law Center and Philadelphia Citizens for Children and Youth.

Philip J. Katauskas, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Support Center for Child Advocates.

Frederick J. Bosch, Stradley, Ronan, Stevens & Young, Philadelphia, PA, for Child, Youth and Family Council of Delaware Valley.

Judith Brown Chomsky, Philadelphia, PA, for Local 2186 of American Federation of State, County & Mun. Employees, AFL–CIO and Local 2187 of American Federation of State, County & Mun. Employees, AFL–CIO.

Lorray Brown, Deputy City Sol., Richard J. Gold, City Solicitor's Office, Chief Deputy City Sol., Philadelphia, PA, for W. Wilson Goode, Joan M. Reeves and Maxine Tucker.

Jonathan Walters, Nancy B.G. Lassen, Willig, Williams & Davidson, Philadelphia, PA, for AFSCME Dist. Council 47, American Federation of State, County and Mun. Employees, AFL–CIO.

Thomas J. Wamser, Deputy City Sol., Doris M. Leisch, City of Philadelphia, Law Dept., Philadelphia, PA, for W. Wilson Goode, Joan M. Reeves and Maxine Tucker.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

This is a civil rights action brought on behalf of children in Philadelphia who have been placed in the custody of the Philadelphia Department of Human Services ("DHS") alleging that Defendants by their actions or inactions have denied Plaintiffs their rights by refusing to conform their activities to the requirements of federal law, the United States Constitution, and state law and regulations. Plaintiffs are in the custody of DHS because their parents are unable to care for them or because of allegations that they have been abused or neglected. This case was brought on behalf of the named Plaintiffs through their Next Friends. The Commonwealth and City Defendants and Defendant Judge Edward J. Bradley have filed a Motion for Summary Judgment in this action. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court is required to view the record in the light most favorable to the party opposing the motion for summary judgment. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). All justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party. *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 595 F.Supp. 800, 802 (E.D.Pa.1984) (citations omitted).

Defendants have asserted numerous grounds upon which summary judgment should be granted. This Court will address each of these arguments separately.

## I. PLAINTIFFS' CLAIMS UNDER THE ADOPTION ASSISTANCE AND CHILD WELFARE ACT:

Plaintiffs maintain that Defendants are engaged in ongoing violations of the Adoption Assistance and Child Welfare Act of 1980 (the "Adoption Act"), 42 U.S.C. §§ 620–28, 670–79. Plaintiffs seek declaratory and injunctive relief to address these alleged viola-

tions. The Adoption Act established a federal reimbursement program for various expenditures made by states in administering foster care and adoption services. Pursuant to § 671(a) of the Adoption Act, a state must submit a plan to the Secretary of Health and Human Services for approval. This plan must contain numerous features which are listed in § 671(a). 42 U.S.C. § 671(a)(1)–(17). Plaintiffs do not claim that the Commonwealth of Pennsylvania lacks such a plan but argue that the Commonwealth's plan is not being implemented properly and that they have a right to privately enforce the Adoption Act's provisions.

■ Recently, in *Suter v. Artist M.*, — U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court of the United States addressed the issue of whether private individuals have the right to enforce by suit a provision of the Adoption Act either under the Act itself or through an action under 42 U.S.C. § 1983. The district court and the Court of Appeals for the Seventh Circuit held that 42 U.S.C. § 671(a)(15) contained an implied right of action which could also be enforced under 42 U.S.C. § 1983. The Supreme Court reversed and held that § 671(a)(15) of the Adoption Act does not confer an enforceable right on behalf of its beneficiaries nor does it create an implied cause of action on the beneficiaries' behalf. —— U.S. at ——, 112 S.Ct. at 1370.

Respondents in *Suter* filed their action seeking declaratory and injunctive relief under the Adoption Act. Respondents were a class of children who alleged that Illinois state officials responsible for the operation of foster care were failing to make the "reasonable efforts" as required under the Adoption Act. Section 671(a)(15) of the Adoption Act provides that:

### (a) Requisite features of State plan

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—

(15) effective October 1, 1983, provides that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home.

42 U.S.C. § 671(a)(15). Plaintiffs alleged that Defendants had failed to make reasonable efforts to prevent removal of children from their homes and to facilitate reunification of families where removal had occurred. The Court in *Suter* recognized that the Adoption Act is mandatory in its terms, however, it examined what precisely is required of states by the Adoption Act pursuant to *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). *Suter*, — U.S. at ——, 112 S.Ct. at 1367. The *Suter* Court determined that the only requirement under § 671(a) of the Adoption Act is that the state have a plan that is approved by the Secretary which contains the listed requirements. *Id.* Furthermore, Congress has not provided statutory guidance in § 671(a)(15) as to how "reasonable efforts" is to be measured. *Id.* at ——, 112 S.Ct. at 1368. The Court stated that this is a "directive whose meaning will obviously vary with the circumstance of each individual case." *Id.* When it comes to compliance with the plan, states are given broad discretion. Moreover, the Court stated that other sections of the Adoption Act facilitate in enforcing the "reasonable efforts" clause. For instance, § 671(b) of the Adoption Act provides that the Secretary can reduce or eliminate reimbursement to a state if the state's plan no longer complies with § 671(a) or if there is a substantial failure in the administration of the plan such that the state is not complying with its plan. —— U.S. at ——, 112 S.Ct. at 1368.

The Court in *Suter* found that the "reasonable efforts" language, examined in the context of the entire Adoption Act:

does not unambiguously confer an enforceable right upon the Act's beneficiaries. The term 'reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary in the manner previously discussed.

*Id.* at ——, 112 S.Ct. at 1370. The Court held that § 671(a)(15) of the Adoption Act does not create a right to enforce this provi-

sion under 42 U.S.C. § 1983 nor does it contain an implied right of action for private enforcement. *Id.*

Respondents in *Suter* further argued that under 42 U.S.C. § 1983 they could sue to obtain enforcement of § 671(a)(3) of the Adoption Act. *Id.* at ——, 112 S.Ct. at 1368. Section 671(a)(3) of the Adoption Act provides that: "the plan shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. § 671(a)(3). The Court found that the language "in effect" is "directed to the requirement that the plan apply to all political subdivisions of the State, and is not intended to otherwise modify the word 'plan.'" *Suter*, —— U.S. at ——, 112 S.Ct. at 1368. Moreover, the Court went on to state that Plaintiffs' claim for relief based upon § 671(a)(9) of the Adoption Act fails to sustain a cause of action. *Id.* n. 10. Section 671(a)(9) of the Adoption Act states that the state plan shall provide that the state agency report to the appropriate official or agency any known or suspected instances of abuse, neglect, or exploitation of a child receiving aid. *See* 42 U.S.C. § 671(a)(9). The Court stated that this subsection is "merely another feature which the state plan must include to be approved by the Secretary...." —— U.S. at —— n. 10, 112 S.Ct. at 1368 n. 10.

In the present case, Plaintiffs argue that Defendants are violating their rights under the Adoption Act by failing to provide them with: (1) an information system that conforms to statutory requirements; (2) written case plans that contain mandated elements, periodic reviews and dispositional hearings; (3) a permanent placement program; (4) a preplacement preventive service program; (5) proper care and placement in the least restrictive (most family-like) setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child; (6) foster care placements that conform to nationally accepted standards; and (7) reasonable efforts to prevent their removal from their biological parents or to enable them to return to those parents. These claims are asserted under §§ 627(a)(2)(A), (B), and (C), 627(b)(3), 671(a)(10) and 671(a)(15) of the Adoption Act. Plaintiffs do not contest the dismissal of their

claims under § 671(a)(15) of the Adoption Act based upon the *Suter* decision. However, Plaintiffs maintain that their remaining claims under the Adoption Act are still viable since these subsections were not specifically addressed by the Court in *Suter.*

■ Section 671(a)(10) of the Adoption Act provides that:

(a) In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—

(10) provides for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, and provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part or part B of this subchapter.

42 U.S.C. § 671(a)(10). Plaintiffs contend that under this section they have an enforceable right to placement in foster homes or other child care institutions which conform to national standards. Plaintiffs claim that § 671(a)(10) of the Adoption Act is sufficiently clear and unambiguous to create a private right of action since it refers to "recommended standards of national organizations."

This Court finds that § 671(a)(10) fails to unambiguously confer upon Plaintiffs a private right of enforcement under this provision. This section states that a state authority shall be designated which will be responsible for establishing and maintaining standards for foster family homes and child care institutions that must be "reasonably in accord with recommended standards of national organizations...." 42 U.S.C. § 671(a)(10). The language of this section does not confer upon Plaintiffs a "right" to foster homes or institutions which are in accord with recommended standards of national organizations but clearly states that the state plan must provide for the designa-

tion of a state authority or authorities which shall establish and maintain such standards. Moreover, "reasonably in accord" is as vague and ambiguous as "reasonable efforts" under § 671(a)(15).

Furthermore, this Court concludes that § 671(a)(10), like § 671(a)(15), is simply another component which the state plan must include in order to be approved by the Secretary to receive federal funding. The Supreme Court's reasoning in *Suter* applies equally to this subsection of the Adoption Act. The *Suter* Court examined two other subsections of § 671(a). The respondents asserted claims under § 671(a)(3) and (9) of the Adoption Act along with § 671(a)(15). The Court found that these subsections, like § 671(a)(15), did not create a private right of enforcement by the Act's beneficiaries and were merely another feature which the state plan must include for approval. *See* — U.S. at —— n. 10, 112 S.Ct. at 1367–68, n. 10. The language of *Suter* is clear. Plaintiffs may not bring an action under the Adoption Act itself or 42 U.S.C. § 1983 for alleged failures of the Commonwealth to implement any feature of its plan which has been approved by the Secretary. The Supreme Court stated that:

> [T]he Act does place a requirement on the States, but that requirement only goes so far as to ensure that the State have a plan approved by the Secretary which contains the 16 listed features.

*Id.* at ——, 112 S.Ct. at 1367. The Court further stated that:

> The regulations promulgated by the Secretary to enforce the Adoption Act do not evidence a view that § 671(a) places any requirement for state receipt of federal funds other than the requirement that the State submit a plan to be approved by the Secretary.

*Id.* at ——, 112 S.Ct. at 1369.

■ Plaintiffs further maintain that Defendants are violating §§ 627(b)(3) and 627(a)(2)(A), (B) and (C) of the Adoption Act. Sections 627 and 671 are both part of a funding scheme by which Congress provides funds to a state to assist such state's child welfare programs. The Adoption Act comprises parts IV–B and IV–E of the Social Security Act. Part IV–B, 42 U.S.C. §§ 620–628, contains the program through which Congress provides funds to states to assist them in developing a broad range of child welfare services some of which are directed at children in foster care. Part IV–E, 42 U.S.C. §§ 670–679, contains the program through which Congress provides funds to reimburse states for child-specific foster care and adoption expenses which have been incurred.

Plaintiffs claim that §§ 627(a)(2)(A), (B) and (C) and 627(b)(3) are binding on the Commonwealth because it receives the requisite federal funding. Defendants argue that, except with respect to the amount of funding, there is no significant difference between the language of Part IV–B, which contains § 627, and Part IV–E, which contains § 671. Defendants state that each Part simply provides that a state must have in place certain programs and procedures in order to receive federal funding.

Section 627(b)(3) provides that a state's funding amount will be reduced to a certain level unless such state:

> has implemented a preplacement preventive service program designed to help children remain with their families.

42 U.S.C. § 627(b)(3). Section 627(a)(2) requires that in order for a state to qualify to receive funding above a specified level, such state must:

> ha[ve] implemented and is operating **to the satisfaction of the Secretary—**
>
> (A) a statewide information system from which the status, demographic characteristics, location, and goals for the placement of every child in foster care or who has been in such care within the preceding twelve months can readily be determined;
>
> (B) a case review system (as defined in section 675(5) of this title) for each child receiving foster care under the supervision of the State; and
>
> (C) a service program designed to help children, where appropriate, return to families from which they have been removed or be placed for adoption or legal guardianship.

42 U.S.C. § 627(a)(2)(A), (B) & (C) (emphasis added). Plaintiffs argue that regardless of the scope of the *Suter* decision upon § 671, that decision does not affect their claims under § 627. Defendants maintain that the reasoning in *Suter* also applies to § 627 of the Adoption Act.

Upon examination of the language of the various subsections of § 671 and § 627, these subsections are extremely similar. Section 627(a)(2)(B) provides that in order to receive various funds, a state must have implemented and operating a case review system as defined in § 675(5). Section 671(a)(16) provides that a state must have a plan which provides for a case review system as defined in § 675(5). Moreover, § 671(a)(15) requires a state plan to provide that reasonable efforts will be made to prevent removal of children from their homes or to return the children to their homes. In comparison, § 627(b)(3) also requires a program to prevent removal of children from their homes. Section 627(a)(2)(C) also requires a program designed to help children "return to families from which they have been removed or be placed for adoption or legal guardianship." These three sections provide for programs and/or efforts to ensure that children remain in their homes or return to their homes where appropriate.[1]

The main difference between these sections is the amount of federal funding available to a state. As discussed in *Suter*, if a state is not complying with its state plan, then the Secretary can reduce or eliminate reimbursement under § 671(b). Under § 627, if a state does not have implemented and operating to the "satisfaction of the Secretary" the various programs and systems as required under §§ 627(b)(3) and 627(a)(2)(A), (B) and (C), then the state will not receive the higher level of funding under those sections. Interestingly, the title of § 627 is "Foster care protection required for additional payments."

This Court concludes that the language of §§ 627(b)(3) and 627(a)(2)(A), (B) and (C) does not unambiguously confer an enforce-able right on behalf of its beneficiaries under 42 U.S.C. § 1983 nor create an implied cause of action for private enforcement. To hold otherwise would be in contradiction of the reasoning applied by the Supreme Court in *Suter*. These sections examined in the context of the entire Adoption Act clearly do not grant individuals a private right of enforcement. Accordingly, Defendants are entitled to summary judgment on all Plaintiffs' claims under the Adoption Act. Therefore, summary judgment is granted in favor of Defendants on Plaintiffs' claims under §§ 627(a)(2)(A), (B) and (C), 627(b)(3), 671(a)(10) and 671(a)(15) of the Adoption Act.

## II. PLAINTIFFS' CLAIMS UNDER THE CHILD ABUSE PREVENTION AND TREATMENT ACT:

■ Plaintiffs maintain that Defendants are engaged in ongoing violations of the Child Abuse Prevention and Treatment Act (the "Child Abuse Act"), 42 U.S.C. §§ 5101–06. Plaintiffs seek declaratory and injunctive relief and claim that they are being deprived of rights conferred under the Child Abuse Act which include: right to prompt and appropriate investigation of reports of abuse or neglect; their right to protection from those who endanger their health and welfare; and the right to administrative procedures, trained and qualified personnel, effective programs and facilities. Defendants argue that the Child Abuse Act does not create a private right of action under 42 U.S.C. § 1983.

In *Jensen v. Conrad*, 570 F.Supp. 91 (D.S.C.1983), *aff'd*, 747 F.2d 185 (4th Cir. 1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985), officials of the South Carolina Department of Social Services were sued for failure to protect a decedent child from parental abuse. The court dismissed the plaintiffs' claims under the Child Abuse Act on the ground that the Act was a mere federal-state funding statute which did not create enforceable rights under 42 U.S.C. § 1983. 570 F.Supp. at 112–13. The *Jensen* court stated that "the fact that abused children are the indirect recipients of federal

---

1. Section 627(a)(2)(A) provides for a statewide information system which is not addressed in § 671(a). Defendants claim that not one of the Plaintiffs make a claim under this section despite the mention of it in Plaintiffs' memorandum in opposition to summary judgment.

largess does not, in and of itself, create enforceable 'rights' in the statute itself." *Id.* at 112 (citing *Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210 (4th Cir. 1981)). The court in *Jensen* analogized its decision to *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) where the Supreme Court held that the Developmentally Disabled Assistance Act and Bill of Rights Act created no substantive right of mentally retarded persons to appropriate treatment in the least restrictive environment. 570 F.Supp. at 112–13. The court explained that the Child Abuse Act, similar to the Disabled Assistance Act, was a "federal-state" funding statute which does not create a private right of action under 42 U.S.C. § 1983. *Id.* The recent decision of the Supreme Court in *Suter* further supports the unwillingness of the Court to find a private right of action under such statutes.

This Court finds that the Child Abuse Act does not give rise to an enforceable private right of action under 42 U.S.C. § 1983. Therefore, summary judgment is granted in favor of Defendants on Plaintiffs' claims under the Child Abuse Act.

III. CLAIMS OF PLAINTIFFS, KYLE S. AND TODD McL., UNDER THE REHABILITATION ACT, THE DISABILITIES ACT AND THE EQUAL PROTECTION CLAUSE:

■ Plaintiffs, Kyle S. ("Kyle") and Todd McL. ("Todd"), allege that they are being deprived of their rights under § 794 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq.* and their rights under § 12132 of the Equal Opportunity for Individuals with Disabilities Act (the "Disabilities Act"), 42 U.S.C. § 12101 *et seq.* These Plaintiffs also claim that they have been denied equal protection of the law in violation of the fourteenth amendment to the United States Constitution.

The Rehabilitation Act and the Disabilities Act prohibit discrimination against handicapped individuals by a program which receives federal financial assistance. 29 U.S.C. § 794; 42 U.S.C. § 12132. The Equal Protection clause prohibits disparate treatment by the government of persons similarly situated absent a rational, substantial or compelling reason. Amendment XIV of the United States Constitution.

Defendants argue that Plaintiffs have not established that Kyle and Todd are being discriminated against based upon their alleged handicaps. Defendants base this argument on the fact that Plaintiffs have failed to allege that Kyle and Todd have been treated any differently from any of the other Plaintiffs since all of the Plaintiffs claim that they are receiving insufficient and untimely services from DHS. Plaintiffs state that there is a distinct difference between Kyle's and Todd's cases and the other Plaintiffs because the failure of DHS to pursue adoption of Kyle and Todd is specifically due to their physical disabilities.

Plaintiffs maintain that DHS has designated Kyle and Todd as "unadoptable" while none of the other Plaintiffs have been classified as "unadoptable." Moreover, they allege that DHS has excluded Kyle and Todd from certain programs which are necessary for adoption. Kyle alleges that DHS failed to seek a permanent home or transfer him to the adoption unit because he was classified as "not adoptable." Todd alleges that DHS refused to change his goal to adoption or initiate proceedings to terminate parental rights solely because he is HIV positive. Plaintiffs argue that while Kyle and Todd are more physically disadvantaged than many other children in custody of DHS, there is no support in the record for the conclusion that Kyle and Todd are "not adoptable" or that the disparate treatment of these two children by DHS is justified.[2] Defendants argue that the record establishes that Kyle and Todd have not been discriminated against based upon their physical disabilities. The record in this case demonstrates that genuine issues of material fact exist on the discrimination

---

2. Plaintiffs cite to deposition testimony that Todd was recently described by his caseworker as "pretty healthy." Plaintiffs further cite testimony that Kyle is able to eat semi-solid food with assistance and has a functional vocabulary despite his disabilities which confine him to a wheelchair. Plaintiffs' memorandum of law in opposition to summary judgment at p. 107.

claims of Plaintiffs Kyle and Todd. Therefore, summary judgment on these claims is hereby denied.

■ Defendants further argue that Todd is not a handicapped individual as defined by the Rehabilitation Act. The Rehabilitation Act applies to an individual who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities,
>
> (ii) has a record of such an impairment, or
>
> (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B) (1992). Plaintiffs allege that Todd is symptomatic HIV positive and thus constitutes an individual with a handicap within the meaning of the Rehabilitation Act.

Several appellate and district courts have addressed the issue of whether the Rehabilitation Act applies to individuals who have the HIV virus. *Harris v. Thigpen,* 941 F.2d 1495, 1522–24 (11th Cir.1991) (for limited purposes of appeal, court found that HIV infected prisoners had satisfied threshold criterion of demonstrating a "handicap" within meaning of Rehabilitation Act); *Leckelt v. Board of Commissioners of Hosp. Dist. Number 1,* 909 F.2d 820, 825 (5th Cir.1990) (court assumed for purposes of appeal that seropositivity to HIV antibodies was an impairment protected under Rehabilitation Act and that officials treated plaintiff as though he had an impairment); *Chalk v. United States Dist. Ct., Central Dist. of Cal.,* 840 F.2d 701, 705 n. 6 (9th Cir.1988) (district court ruled teacher diagnosed with AIDS was handicapped under Rehabilitation Act which was not contested on appeal); *Doe v. Dolton Elementary Sch. Dist. No. 148,* 694 F.Supp. 440, 443–44 (N.D.Ill.1988) (elementary school student infected with AIDS entitled to preliminary injunction which allowed him to return to school since court found he was likely to prevail in establishing under Rehabilitation Act that he was handicapped). The Supreme Court expressly left open the question of whether asymptomatic carriers of a disease such as AIDS could be considered "handicapped" under the Rehabilitation Act. *School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 282 n. 7, 107 S.Ct. 1123, 1128 n. 7, 94 L.Ed.2d 307 (1987).

Plaintiff Todd McL. argues that his HIV infection has been perceived by DHS as disqualifying him for adoption. The definition of handicapped extends to individuals who are regarded by others as having a physical or mental impairment which substantially limits one or more of such person's major life activities. The phrase " 'is regarded as having such an impairment' " means " 'is treated ... as having such an impairment.' " *Leckelt,* 909 F.2d at 825 (citations omitted). In *Harris v. Thigpen,* 941 F.2d 1495, 1523 (11th Cir.1991), it was undisputed that HIV-positive prisoners were excluded from programs solely on the basis of their seropositive status for the stated purpose of reducing transmission of the disease. The *Harris* court stated that "it is clear that this correctional system *treats* the inmates such that they are unable, or perceived as unable, to engage in 'major life activities' relative to the rest of the prison population." *Id.* at 1524. Thus, the court found that the prisoner class members under the circumstances had demonstrated a "handicap" within the meaning of the Rehabilitation Act.

In the present case, Defendants contend that Plaintiffs have not established that Todd has an impairment which limits his life activities. Plaintiffs argue that Todd is a "handicapped" individual under the Rehabilitation Act because he is "regarded as having such an impairment" since his HIV infection has been perceived by DHS as disqualifying him for adoption. Genuine issues of material fact exist as to whether Todd is a handicapped individual within the meaning of the Rehabilitation Act, *i.e.,* whether he has an impairment which substantially limits one or more of his major life activities or whether DHS has regarded him as having such an impairment. Accordingly, Defendants' motion for summary judgment on Plaintiff Todd McL.'s claim under the Rehabilitation Act is denied.

## IV. ISSUE OF WHETHER PLAINTIFFS' CLAIMS ARE MOOT:

Defendants argue that Plaintiffs' claims for injunctive and declaratory relief are moot. Plaintiffs have conceded that the claims of

seven Plaintiffs are moot.[3] Accordingly, summary judgment is granted in favor of Defendants on these seven Plaintiffs' claims. Plaintiffs argue that the claims of the remaining 23 children are not moot. They claim that Defendants continue to violate Plaintiffs' constitutional and statutory rights. Defendants state that because the status of each plaintiff has changed since the filing of their respective complaints, there is no relief which this Court can grant.

Under Article III of the United States Constitution, this Court may exercise its jurisdiction only if a case or controversy exists. *International Brotherhood of Boilermakers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987). A case is moot when the issues are no longer live or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

The mootness analysis entails an intensely factual inquiry which focuses on whether changed circumstances since the beginning of the litigation have forestalled any occasion for meaningful relief. *International Brotherhood*, 815 F.2d at 915 (quoting *Jersey Central Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir.1985)). An exception to the mootness doctrine permits a court to review otherwise moot issues if they are "capable of repetition, yet evading review." *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183. In the absence of a class action, this exception is limited to circumstances where (1) the challenged action was too short in its duration to be fully litigated prior to its expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.* As the Supreme Court has noted, to assume automatically that the case is moot because defendants have stopped certain practices, would merely leave defendants "free to return to [their] old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (citation omitted).

In response to Defendants' argument that Plaintiffs' claims are now moot, Plaintiffs have supplied the affidavits of Plaintiffs' Next Friends, three psychiatrists and a nationally recognized social work expert and the depositions of the DHS caseworkers of the remaining 23 Plaintiffs to support their claim that the plaintiff children are still not receiving the services required under the law. Upon a careful examination of the record, this Court denies Defendants' Motion for Summary Judgment on the claims of the remaining 23 Plaintiffs based on the mootness doctrine. Defendants have failed to meet their burden of establishing as a matter of law that Plaintiffs' claims are moot or that there is no reasonable expectation that the alleged wrongful acts will reoccur.

## V. ISSUE OF WHETHER THIS COURT SHOULD ABSTAIN FROM HEARING PLAINTIFFS' CLAIMS:

Defendants argue that this Court should abstain from deciding the issues presented in this action pursuant to the abstention doctrine asserted in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Defendants maintain that Plaintiffs' claims are within the jurisdiction of the Philadelphia Family Court which conducts the periodic dispositional review hearings of Plaintiffs' cases. Under the *Younger* doctrine, federal courts must abstain from interfering with ongoing state court proceedings absent extraordinary circumstances that present immediate irreparable injury to the federal plaintiff. *Id.* at 46, 91 S.Ct. at 751; *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2520, 73 L.Ed.2d 116 (1982); *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979). In determining if abstention is appropriate under the circumstances, the court must consider whether:

(1) there are ongoing state judicial proceedings;

(2) the state proceedings implicate important state interests; and

---

**3.** These seven Plaintiffs include the H. Children, Tamara I., Carl I. and Alicia P.

(3) the state proceedings afford an adequate opportunity to raise federal claims. *See Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521; *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir.1989). If these three criteria are met, the court should abstain unless the federal plaintiff establishes that the state proceedings are being undertaken in bad faith or to harass, or some other extraordinary circumstances exist such that deference to the state proceedings presents a significant and immediate potential for irreparable harm to the federal interests asserted. *See Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2522; *Younger*, 401 U.S. at 49–50, 91 S.Ct. at 753; *Schall*, 885 F.2d at 106. However, the Supreme Court has stated that the " 'doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)).

█ Defendants argue that the application of the *Younger* doctrine to this case demonstrates that this Court should abstain since state law requires that the Family Court conduct periodic review hearings to review the appropriateness of the placement or services provided for every child committed to the temporary custody of DHS or under DHS supervision. The purpose of these hearings is for the court to determine the continuing disposition "best suited to the protection, and physical, mental and moral welfare" of the child. 42 Pa.C.S.A. § 6351(e). Plaintiffs argue that the *Younger* doctrine does not apply under the circumstances of this case since Plaintiffs do not seek to enjoin or in any way interfere with any ongoing proceedings in Family Court. Moreover, Plaintiffs claim that the relief sought in this action is not available in Family Court since it does not have jurisdiction over certain claims, cannot exercise jurisdiction over several parties in this case and is institutionally incapable of providing the relief sought by Plaintiffs. They also state that the Family Court proceedings involving most of Plaintiffs are merely periodic reviews of their

status in the custody of DHS which are not the type of ongoing judicial proceedings that warrant abstention.

The Philadelphia Family Court does not have jurisdiction to hear cases against the Commonwealth of Pennsylvania. *See* 42 Pa. C.S.A. §§ 761(a)-(b). Plaintiffs in this case have brought action against the Governor of Pennsylvania and the Secretary of the Pennsylvania Department of Public Welfare. The Third Circuit in *Winston v. Children & Youth Services of Delaware County*, 948 F.2d 1380 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2303, 119 L.Ed.2d 225 (1992) addressed the issue of abstention in a child welfare case involving similar circumstances. In *Winston*, the plaintiffs challenged a regulation of the State Department of Public Welfare and named the Secretary of that Department as a defendant. The court stated that it was highly unlikely that all of the plaintiffs' claims would have been cognizable in the state dependency/custody proceedings since actions against the Commonwealth government were within the exclusive jurisdiction of the Commonwealth Court. *See id.* at 1385–86. Though the court ultimately decided that the defendants had waived the abstention issue, it noted that it would be "inappropriate to abstain when the applicable state procedures do not afford the plaintiffs the opportunity to raise their claim in the particular state proceedings." *Id.* at 1386 (citing *Moore v. Sims*, 442 U.S. 415, 425–26 n. 9, 99 S.Ct. 2371, 2378–79 n. 9, 60 L.Ed.2d 994 (1979)). Similarly, in the present case, all of Plaintiffs' claims cannot be heard in their state court proceedings. The Philadelphia Family Court does not have jurisdiction to address all the claims involved in this action.

This Court finds that abstention is inappropriate in this case. Defendants have failed to establish that the Family Court proceedings afford Plaintiffs with an adequate opportunity to raise their federal claims. The claims asserted by Plaintiffs in the present case are beyond the scope and jurisdiction of the Family Court case review proceedings. Therefore, summary judgment is denied on the grounds that this Court

should abstain from adjudicating Plaintiffs' claims.

## VI. PLAINTIFFS' CONSTITUTIONAL CLAIMS:

Defendants argue that Plaintiffs' constitutional claims under the first, ninth and fourteenth amendments of the United States Constitution have no basis in law. Plaintiffs allege that Defendants are violating: (1) their right to be free from harm while in state custody; (2) their right to a relationship with their natural family; (3) their right to placement in the least restrictive, appropriate placement; and (4) certain state-created liberty rights.

### A. *Plaintiffs' Substantive Due Process Claims of the Right to Be Free from Harm:*

Defendants cite *DeShaney v. Winnebago County DSS,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) in support of their argument that summary judgment must be granted on Plaintiffs' claims under the fourteenth amendment. *DeShaney* involved an action under 42 U.S.C. § 1983 against social workers and other local officials who had allegedly received complaints of child abuse by the plaintiff's father. The plaintiffs claimed that the state's failure to remove the child from parental custody was a violation of the child's liberty interest in freedom from unjustified intrusions on personal security under the fourteenth amendment. The Supreme Court stated that the due process clause does not require a state to provide its citizens with particular protective services. *Id.* at 196–97, 109 S.Ct. at 1003-04. The Court held that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The purpose of the due process clause of the fourteenth amendment "was to protect people from the State, not to ensure that the State protected them from each other." *Id.* at 196, 109 S.Ct. at 1003.

The plaintiffs in *DeShaney* further argued that the state had a duty to provide adequate protective services which arose out of the "special relationship" that existed between the state and the plaintiff since the state knew that the plaintiff faced the danger of abuse and proclaimed its intention to protect him against such danger. *Id.* at 197, 109 S.Ct. at 1004. The Court rejected this argument and stated that the cases cited by the plaintiffs only stand for the proposition that "when a State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200, 109 S.Ct. at 1005 (citation omitted). The affirmative duty to protect arises from the limitation the state has imposed upon an individual's freedom to act on his own behalf through incarceration, institutionalism, or other similar restraint of personal liberty. *Id.* at 200, 109 S.Ct. at 1005. The Court noted that if the state had removed the plaintiff from free society and placed him in a foster home, then there may exist an affirmative duty to protect since the situation would be "sufficiently analogous to incarceration or institutionalization." *Id.* at 201 n. 9, 109 S.Ct. at 1006 n. 9.

Several circuit and district courts have held that such an affirmative duty does exist with respect to foster children. *See Yvonne L. by and through Lewis v. New Mexico Dept. of Human Servs.,* 959 F.2d 883, 892–93 (10th Cir.1992); *Chrissy F. by Medley v. Mississippi Dept. of Pub. Welfare,* 925 F.2d 844, 851–52 (5th Cir.1991); *K.H. through Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990); *Taylor by and through Walker v. Ledbetter,* 818 F.2d 791, 795–96 (11th Cir. 1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989); *Doe v. New York City Dept. of Social Servs.,* 649 F.2d 134, 141 (2d Cir.1981), *cert. denied sub nom. Catholic Homes Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *LaShawn A. v. Dixon,* 762 F.Supp. 959, 989–90 (D.D.C.1991); *R.C. by the Alabama Disabilities Advocacy Project v. Hornsby,* No. 88–D–1170–N, slip op. at 12 (M.D.Ala. Apr. 19, 1989); *Aristotle P. v. Johnson,* 721 F.Supp. 1002, 1008–09 (N.D.Ill.1989); *Brooks v. Richardson,* 478 F.Supp. 793, 795–96 (S.D.N.Y. 1979).

The Third Circuit addressed this issue in *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364 (3d Cir. 1992). In *D.R.,* the court affirmed the dismissal of a § 1983 action brought by two female students who had been sexually assaulted by male students while on school grounds. The plaintiffs argued that a "special relationship" existed with the school defendants which would create an affirmative duty to protect under the due process clause. *Id.* at 1369. The court stated:

'[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.* food, clothing, shelter, medical care and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.'

*D.R.,* 972 F.2d at 1370 (quoting *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005). The court in *D.R.* held that no "special relationship" existed since the school defendants' authority over D.R. during the school day did not create the type of physical custody necessary to impose an affirmative duty to protect under the due process clause. 972 F.2d at 1372–73. The Third Circuit in *D.R.* addressed the relationship created between foster children and the state. *Id.* at 1372. "A relationship between the state and foster children arises out of the state's affirmative act in finding the children and placing them with state-approved families." *Id.* (citing *Taylor by and through Walker v. Ledbetter,* 818 F.2d 791, 794–97 (11th Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989)). The court in *D.R.* stated that:

By so doing, the state assumes an important continuing, if not immediate, responsibility for the child's well-being. In addition, the child's placement renders him or her dependent upon the state, through the foster family, to meet the child's basic needs.

972 F.2d at 1372. The court distinguished this type of situation with the situation involved in *D.R.* where students do not depend upon the schools to provide for their basic human needs. *Id.*

Defendants argue in their reply memorandum that only Plaintiffs who are in the involuntary custody of DHS may assert a claim for substantive due process rights. Numerous courts have made this involuntary versus voluntary distinction. *See DeShaney,* 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9 (situation where state by affirmative exercise of its power removes child from free society and places him in a foster home may be sufficiently analogous to incarceration or institutionalization); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (recognizing state's obligation to protect involuntarily committed mentally retarded patients); *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 990–91 (1st Cir.1992) (mental health patient failed to state claim for denial of substantive due process because state did not affirmatively act to restrain liberty of patient since he was voluntarily committed); *Fialkowski v. Greenwich Home for Children, Inc.,* 921 F.2d 459, 465 (3d Cir.1990) (personal liberty of mentally retarded man not curtailed by state since voluntarily placed in home by parents); *Woe v. Cuomo,* 729 F.2d 96, 104–05 (2d Cir.), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984) (involuntarily committed mental patients have right to treatment).

Other courts have used this same distinction concerning children in foster care. *See Yvonne L. by and through Lewis v. New Mexico Dept. of Human Servs.,* 959 F.2d 883, 891 (10th Cir.1992) (state must have taken individual into custody and held him against his will for any affirmative duty to attach); *Taylor by and through Walker v. Ledbetter,* 818 F.2d 791, 797 (11th Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989) (child involuntarily placed in foster care is analogous to a prisoner and child confined to mental facility such that foster child may bring claim for violation of fourteenth amendment rights); *K.H. through Murphy v. Morgan,* 914 F.2d 846, 848–49 (7th Cir.1990) (state owed child duty since involuntarily removed from parents' custody); *Milburn v. Anne Arundel County Dept. of Social Servs.,* 871 F.2d 474, 476 (4th Cir.

1989), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 106 (1989) (state lacked responsibility for harm to child voluntarily placed by natural parents in private foster home). In *Aristotle P. v. Johnson,* 721 F.Supp. 1002, 1008–09 (N.D.Ill.1989), the court made the distinction between children who were involuntarily placed in foster homes from those voluntarily placed. The court noted how the status of Aristotle P. had changed over time. Aristotle had been voluntarily placed in the custody of the department upon which his grandmother believed she could regain custody of him when she wished. Some years later, the department refused the grandmother's request to regain custody. At this point, the court stated that Aristotle P. was in the involuntary custody of the department. *Id.* at 1004 n. 1.

■■■ This Court concludes that Plaintiffs who have been involuntarily placed in the custody of DHS may state a claim for violation of their substantive due process rights based upon their right to freedom from harm under the fourteenth amendment of the United States Constitution. Defendants further argue that Plaintiffs do not have a constitutional right to the broad range of services asserted but only a right to have their "basic needs" satisfied. The Supreme Court in *Youngberg* stated that the essentials of care which the state must provide under the due process clause are *adequate* food, shelter, clothing and medical care. 457 U.S. at 324, 102 S.Ct. at 2462 (emphasis added). The state also has the unquestioned duty to provide reasonable safety for those involuntarily deprived of their liberty interests. *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005; *Youngberg,* 457 U.S. at 324, 102 S.Ct. at 2462; *D.R.,* 972 F.2d at 1370. The fourteenth amendment does not mandate an "optimal level of care and treatment." *Winston v. Delaware County Children & Youth Services,* 748 F.Supp. 1128, 1135 (E.D.Pa.1990), *aff'd,* 948 F.2d 1380 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2303, 119

L.Ed.2d 225 (1992); *B.H. v. Johnson,* 715 F.Supp. 1387, 1397–98 (N.D.Ill.1989).

■■■ Plaintiffs allege in their respective Complaints that Defendants have failed to protect them from harm while in state custody.[4] Plaintiffs have submitted affidavits and exhibits in support of their allegations. The record in this case demonstrates that there exists genuine issues of material fact on the issue of whether Defendants are providing Plaintiffs with adequate food, shelter, clothing, medical care and reasonable safety as required under the fourteenth amendment. Therefore, summary judgment is denied on these claims.

■■■ Various Plaintiffs claim that Defendants have violated the fourteenth amendment by failing to provide the children with permanent placements or placement in preadoptive homes pending their adoption. Plaintiffs' constitutional right to be free from harm while in foster care does not entitle them to the right to permanent placements or placement in preadoptive homes. Defendants have an affirmative duty under the due process clause to provide Plaintiffs with *adequate* food, shelter, clothing, medical care and reasonable safety. As a matter of law, this duty does not extend as far as requiring a state to provide foster children with permanent homes or preadoptive homes. Accordingly, summary judgment is granted in favor of Defendants on these claims.

B. *Plaintiffs' Constitutional Claims of Deprivation of Their Right to Family Relationships Free From Undue Governmental Interference:*

Plaintiffs argue that they have a right under the first, ninth and fourteenth amendments to associate with their natural families free of unwarranted state intrusion such as foster care placement that is unnecessary or prolonged unnecessarily. Specifically, the V. Children, Jay V., Ivy and Amelia V., maintain that Defendants have deprived them of their constitutional right to a relationship with

---

4. For example, Plaintiffs have alleged that Defendants have failed to ensure that all children in their custody are in safe homes which can provide necessary and proper care, that children in foster homes are often left unsupervised by DHS

social workers for long periods of time, and that medical care and treatment for children in DHS custody is often inadequate and far below minimal standards.

their biological family by placing Jay in a different foster home than his sisters, Ivy and Amelia.

■ The Supreme Court has held that the parent-child relationship is protected as a matter of substantive due process. *E.g.,* *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978); *Moore v. City of East Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois,* 405 U.S. 645, 651–52, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972). "[T]he child and his parents share a vital interest in preventing erroneous termination of their natural relationship." *Santosky,* 455 U.S. at 760, 102 S.Ct. at 1398. The fundamental liberty interest of natural parents in the care, custody and management of their child cannot be terminated absent a compelling interest. *See Prisco v. United States Dept. of Justice,* 851 F.2d 93, 97 (3d Cir. 1988), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989) (citing *Santosky,* 455 U.S. at 753, 768–69, 102 S.Ct. at 1394, 1402–03). "Generally speaking, absent compelling circumstances, the state may not interfere with the parent-child relationship." *McComb v. Wambaugh,* 934 F.2d 474, 483 (3d Cir.1991) (citing *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)).

The court in *B.H. v. Johnson,* 715 F.Supp. 1387 (N.D.Ill.1989) was confronted with claims for reunification of the plaintiff children with their families and for parent and sibling visitation. The court rejected these claims and stated that:

> to impose an obligation on the state to allocate resources with a view to achieving family reunification would run contrary to the established principle that the state is not obligated under the Fourteenth Amendment to provide substantive services for its citizens.

*Id.* at 1397.

Plaintiffs cite *Aristotle P. v. Johnson,* 721 F.Supp. 1002 (N.D.Ill.1989) and *R.C. by the Alabama Disabilities Advocacy Project v. Hornsby,* No. 88–D–11170–N (slip op.) (M.D.Ala. Apr. 19, 1989) in support of their argument that they have a constitutional right to be placed in the same foster home. In *Aristotle,* the plaintiffs, who were children involuntarily placed in foster care, sued for deprivation of their freedom of association with siblings under the first and fourteenth amendments. The plaintiffs challenged a state policy which either denied sibling visits or provided them infrequently. For example, one plaintiff had only six visits with three of his siblings over a twelve year period. *Id.* at 1008 n. 8. The *Aristotle* court held that the defendants could be held liable for violating the foster children's constitutional right to associate with their families by refusing to provide them with sibling visitation. *Id.* at 1007–08. Similarly, in *R.C.,* the court found that the plaintiff stated a cause of action for violation of his constitutional right to be free of unwarranted governmental interference with his family when the state transferred him to a treatment center more than 200 miles from his family. slip op. at 10–12. In both of these cases, the plaintiffs were claiming deprivation of sibling or parental visits rather than claims for reunification.

■ In the present case, the V. children are not claiming that they are being deprived of visits with each other. Initially, these children were placed together until the circumstances of their foster mother changed. When the children were separated, the two girls who are very close were placed together. After this separation, the V. children's case worker arranged for the children to be placed with the same agency in order to facilitate visitation. Plaintiffs have not alleged they have been denied visitation. Furthermore, it is not disputed that the V. children have had visits. The cases cited by Plaintiffs emphasize the sanctity of familial association and address the constitutional rights of parents and their children not to be deprived of a relationship. These cases do not support Plaintiffs' argument that they have a constitutional right to be placed in the same foster home or to family reunification. Plaintiffs have not alleged that they are being deprived of a relationship with each other. Based upon the record and relevant case law, Plaintiffs have failed to establish that Defendants have violated their constitutional

right to be free from unwarranted governmental interference with their familial relationships. As a matter of law, Defendants are entitled to summary judgment on Plaintiffs' claims that their constitutional right to a relationship free from unwarranted governmental interference has been violated.

### C. Plaintiffs' Constitutional Claims of Violation of Their Right to Placement in the Least Restrictive Setting:

Plaintiffs argue that they have a right to the least restrictive, most appropriate placement under the fourteenth amendment. Plaintiffs, Manuel I., Baby Neal, Max C., Tara M. and the V. children, allege that Defendants have violated this right. Defendants maintain that nothing in the Constitution or case law supports this claim.

In support of their position, Plaintiffs cite *Clark v. Cohen*, 794 F.2d 79 (3d Cir.1986), *cert. denied*, 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986). In that case, the plaintiff, a forty-five year old woman, had been confined to a state institution for the mentally retarded since she was fifteen. She had been involuntarily committed to this institution which was normally for people much more retarded than the plaintiff and had been deprived of training for community living. The plaintiff filed a complaint alleging in part that her rights had been violated under the first and fourteenth amendments. The Third Circuit in *Clark* affirmed the trial court's holding that the plaintiff's substantive right to appropriate treatment had been violated. *Id.* at 87. The Third Circuit found that the trial court's holding was consistent with *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) which set forth the proper balance between the state's interests and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints:

> [*Youngberg* ] requires that restraints be imposed only to the extent required by the judgment of professionals in charge of the involuntarily committed, and that the involuntarily committed receive minimally adequate training.

794 F.2d at 87 (quoting *Youngberg*, 457 U.S. at 321–25, 102 S.Ct. at 2461–63). *Clark* is factually distinguishable from the present case. Moreover, *Clark* does not stand for the proposition, as Plaintiffs argue, that all individuals in the custody of the state have a constitutional right to the least restrictive placement. The court in *Clark* found that the plaintiff had been denied her right to "appropriate treatment" since she had been confined her entire adult life in a state mental state institution rather than released to a community living arrangement.

In *Del A. v. Roemer*, 777 F.Supp. 1297, 1319–20 (E.D.La.1991), the court found that children who are in state custody have no right to be placed in the "least restrictive foster care arrangement." The court stated that the Constitution does not require the state to provide "optimal treatment" to persons who are in its custody. *Id.* at 1319. Furthermore, in *B.H. v. Johnson*, 715 F.Supp. 1387 (N.D.Ill.1989), the plaintiffs, children in foster care, asserted several substantive due process claims against the defendants including violation of their right to the least restrictive placement. The court held that the plaintiffs had no constitutional right to placement in the least restrictive setting since the fourteenth amendment does not mandate an "optimal level of care and treatment." *Id.* at 1397–98.

 As a matter of law, Plaintiffs have failed to establish that they have a constitutional right to be placed in the least restrictive setting while in state foster care custody under the fourteenth amendment. The cases cited by Plaintiffs do not support such an absolute right and are factually distinguishable from the circumstances of this case. As stated above, Plaintiffs who have been involuntarily placed in the custody of DHS have substantive due process rights under the fourteenth amendment to be free from harm while in state custody. Thus, Defendants have an affirmative duty to provide these Plaintiffs with adequate food, shelter, clothing, medical care and reasonable safety under *DeShaney*. Defendants are not required under the Constitution to provide Plaintiffs with an optimal level of care and treatment. Plaintiffs are not arguing under this claim that their foster care placements are not reasonably safe or they are not being provid-

ed with their basic needs. Plaintiffs' claim to the least restrictive, most appropriate placements is simply a request for "optimal" treatment while in the custody of the state. Summary judgment is hereby granted in favor of Defendants on Plaintiffs' claim that their constitutional right to the least restrictive placement has been violated.

D. *Plaintiffs' Claims of Violation of Their Procedural Due Process Rights:*

▆▆ Plaintiffs argue that Defendants have violated their right not to be deprived of state or federally created liberty or property rights without due process of law under the fourteenth amendment. Procedural due process rights arise when a party has been deprived of a recognized property or liberty interest without the procedural protections of the fourteenth amendment. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* at 334, 96 S.Ct. at 902 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

Defendants claim that Plaintiffs have failed to demonstrate that they have been deprived of protected interests without the benefit of procedural due process. Defendants argue that Plaintiffs have not alleged that they have in fact invoked the procedural protections afforded them under Pennsylvania law. Defendants cite to the following procedural protections: (1) public welfare regulations which provide for the right to appeal and to fair hearings under 55 Pa.Code § 3130.62 when government action results in any denial or termination of services; (2) statutory right to judicial review of Commonwealth agency's or local agency's adjudication pursuant to the Administrative Agency Law, 2 Pa.C.S.A. § 702, and the Local Agency Law, 2 Pa. C.S.A. § 752; and (3) rights of Plaintiffs to

"disposition review hearings" under the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365.

Plaintiffs argue that the procedural protections cited by Defendants fail to provide them with sufficient procedural due process and in most cases may not even be invoked by the plaintiff children. They contend that the public welfare regulations cited by Defendants regarding the right to appeal the reduction or suspension of services offers only biological parents not Plaintiffs the right to a post-deprivation hearing. The mere fact that their parents have a right to such appeals does not necessarily protect Plaintiffs' rights since 21 of the 23 Plaintiffs have no on-going relationship with their biological parents.

Moreover, Plaintiffs allege that the disposition review hearings are also not an appropriate procedural due process safeguard since (1) it may not be invoked by the plaintiff children and (2) the hearings do not meet constitutional due process requirements. Plaintiffs maintain that they cannot file a petition requesting a disposition review hearing since the regulations which implement 42 Pa.C.S.A. § 6351(f) require DHS to petition the court for such a hearing. Plaintiffs further argue that even if these hearings are intended to provide them with some procedural due process protection, these hearings do not adequately protect their procedural due process rights under the fourteenth amendment because of lack of adequate notice of the hearings, the hearings are not held in a timely manner, DHS caseworkers usually do not attend the hearings, court liaisons are often unable to respond to specific inquiries of the court, city solicitors usually do not appear with liaisons as required, necessary findings are not made by the court, short duration of the hearings, and DHS' failure to comply with orders of the court or substantial delay in compliance.[5]

---

**5.** For example, DHS was ordered to transfer Jamie B.'s case to the Adoption Unit "forthwith" on December 9, 1990. As of the date Plaintiffs filed their response to Defendants' summary judgment motion, this case had still not been transferred. By order dated February 6, 1992, DHS was ordered to transfer Max C.'s case to the Adoption Unit which was not completed until May 5, 1992. By order dated July 10, 1991, DHS was ordered to transfer Sheris C.'s case to the Adoption Unit which was not transferred until seven months later. DHS was ordered on January 8, 1990 to change the permanency planning goal of Kyle S. to adoption which it had not done as of the date of Plaintiffs' response.

■ With respect to the administrative and local agency laws, Plaintiffs claim that this alleged procedural protection does not allow them to challenge DHS' failure to provide them with state created entitlements. These laws provide individuals aggrieved by an agency "adjudication" with the right to appeal to a court of record. *See* 2 Pa.C.S.A. §§ 702, 752. An appeal may only be taken from an adjudication that is "quasi-judicial" in nature which includes notice, opportunity to be heard, and results in findings necessary to resolve issues raised by the evidence and reasons for such findings. *See Keystone Raceway Corp. v. State Harness Racing Comm'n,* 405 Pa. 1, 173 A.2d 97 (1961) (order or action must be judicial in nature for an appeal to lie); *Wortman v. Philadelphia Comm'n on Human Relations,* 139 Pa. Cmwlth. 616, 591 A.2d 331, 333 (1991) (adjudication must afford notice and opportunity to be heard); *Duquesne City Sch. Dist. v. Commonwealth of Pa. Dept. of Educ.,* 124 Pa.Cmwlth. 192, 555 A.2d 959, 960 (1989) (agency adjudication must include notice, hearing, findings and reasons); *Insurance Co. of North Am. v. Commonwealth of Pa., Ins. Dept.,* 15 Pa.Cmwlth. 462, 327 A.2d 411, 413 (1974) (adjudication refers to administrative action which is quasi-judicial in nature). Plaintiffs maintain that the termination of legally mandated services to the plaintiff children is not the result of adjudications, or quasi-judicial proceedings, where Plaintiffs are given a meaningful opportunity to be heard, but are usually the result of inaction on the part of DHS caseworkers due to unfamiliarity with the case and/or lack of monitoring, time or training. Thus, an appeal is not available under the Administrative and Local Agency Laws. Plaintiffs further argue that even if a decision to terminate services were made at a disposition review hearing, these hearings are not "adjudications" under the administrative or local agency laws since they do not provide Plaintiffs with a meaningful right to be heard and do not result in the required findings or reasons for such findings.

■ Defendants failed to address many of these alleged deficiencies in the procedural protections in its reply memorandum. As a matter of law, Defendants have not met its burden of establishing that Plaintiffs have failed to state a valid claim for violation of procedural due process. Genuine issues of material fact exist on this issue. Therefore, summary judgment is hereby denied on Plaintiffs' claims of violation of procedural due process under the fourteenth amendment.

### E. *Appropriate Standard to be Applied to Alleged Constitutional Violations:*

■ Defendants argue that Plaintiffs' claims under the due process clause fail as a matter of law since they fail to allege that Defendants displayed "deliberate indifference" toward them. Defendants further argue that even if Plaintiffs properly alleged deliberate indifference, the record does not support such indifference. Plaintiffs claim that it is only necessary for them to demonstrate that Defendants failed to exercise professional judgment. Plaintiffs also argue that even if the deliberate indifference standard applies, the evidence demonstrates that Defendants have in fact acted with the requisite indifference.

In *Youngberg,* the Supreme Court stated that:

> Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.

457 U.S. at 321–22, 102 S.Ct. at 2461. Liability may only be imposed "when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* at 323, 102 S.Ct. at 2462.

In *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1139 (3d Cir.1990), the Third Circuit held that the professional judgment standard applied in determining whether state administrators had deprived a retarded resident of the state mental institution of his constitutionally protected right to be free from harm while in custody. The court expressly rejected the deliberate indifference standard and held that the due process

clause of the fourteenth amendment required state actors responsible for the care of individuals involuntarily detained by the state through no fault of their own should be held to the *Youngberg* standard. *See Shaw,* 920 F.2d at 1144–45. The Third Circuit stated that although the deliberate indifference standard governs the liability of non-professional defendants, "we hold that the *Youngberg* professional judgment standard should have been applied to the primary care professionals, supervisors and administrators named as defendants." *Id.* 920 F.2d at 1139.

The plaintiffs in *Yvonne L. by and through Lewis v. New Mexico Department of Human Services,* 959 F.2d 883 (10th Cir.1992) alleged that state child welfare administrators had violated their substantive due process rights by failing to take steps necessary to keep them free from harm while in foster care. The Tenth Circuit found that the professional judgment standard should be applied:

> The compelling appeal of the argument for the professional judgment standard is that foster children, like involuntarily committed patients, are 'entitled to more considerate treatment and conditions' than criminals. These are young children, taken by the state from their parents for reasons that generally are not the fault of the children themselves. The officials who place the children are acting in place of the parents.

*Id.* at 894 (quoting *Youngberg,* 457 U.S. at 321–22, 102 S.Ct. at 2461); *see also LaShawn A. v. Dixon,* 762 F.Supp. 959, 996 (D.D.C. 1991) (court held that foster children plaintiffs were required to demonstrate that defendants failed to exercise professional judgment in deciding how to act).

This Court finds that the proper standard to be applied in this case is the professional judgment standard. Similar to institutionalized mental patients, the plaintiff children have been placed in the custody of the state through no fault of their own.

## VII. STRIKING OF ALLEGATIONS IN PLAINTIFFS' COMPLAINTS:

Defendants argue that numerous allegations in Plaintiffs' Amended and Intervening Complaint should be stricken in light of this Court's previous denial of Plaintiffs' motion for class certification. Specifically, the class action allegations set forth in paragraphs 16–20 and the systematic failure allegations set forth in paragraphs 162–221 of the Amended Complaint. In addition, paragraph 138 of the Intervening Complaint which incorporates paragraphs 162–221 of the Amended Complaint. Plaintiffs have not objected to Defendants' request to have these allegations stricken. Paragraphs 16–20 and 162–221 of the Amended Complaint and paragraph 138 of the Intervening Complaint are hereby stricken.

Therefore, this Court enters the following Order:

## ORDER

AND NOW, this 12th day of April, 1993, upon consideration of Defendants' Motion for Summary Judgment and all responses thereto, it is hereby ORDERED that:

1. Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part;

2. Summary Judgment is GRANTED in favor of Defendants on Plaintiffs' claims under §§ 627(a)(2)(A), (B) and (C), 627(b)(3), 671(a)(10) and 671(a)(15) of the Adoption Act;

3. Summary Judgment is GRANTED in favor of Defendants on Plaintiffs' claims under the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–06;

4. Summary Judgment is DENIED on the claims of Plaintiffs Kyle S. and Todd McL. under the Rehabilitation Act, the Disabilities Act and the Equal Protection Clause;

5. Summary Judgment is GRANTED in favor of Defendants on the following Plaintiffs' claims which are moot: the H. Children, Tamara I., Carl I. and Alicia P.;

6. Summary Judgment is DENIED on the grounds that this Court should abstain from adjudicating this action;

7. Summary Judgment is DENIED on the question of whether Defendants are providing Plaintiffs with adequate food, shelter, clothing, medical care and reasonable safety

as required under the substantive due process clause of the fourteenth amendment;

8. Summary Judgment is GRANTED in favor of Defendants on Plaintiffs' claims that they have a right to permanent placements or placement in preadoptive homes under the fourteenth amendment;

9. Summary Judgment is GRANTED in favor of Defendants on Plaintiffs' claims that their constitutional right to a relationship free from unwarranted governmental interference has been violated;

10. Summary Judgment is GRANTED in favor of Defendants on Plaintiffs' claims that they have a constitutional right to the least restrictive placement;

11. Summary Judgment is DENIED on Plaintiffs' claims that their rights to procedural due process under the fourteenth amendment have been violated; and

12. Paragraphs 16–20 and 162–221 of the Amended Complaint and paragraph 138 of the Intervening Complaint are STRICKEN.

### ORDER

AND NOW, this 22nd day of April, 1993, upon consideration of Plaintiffs' Unopposed Motion to Vacate Part of the Court's April 12, 1993 Order Striking Plaintiffs' Class Action and Systemic Allegations, it is hereby ORDERED that Paragraph 12 is vacated to the extent that it strikes allegations due to inadvertence. Plaintiffs will be permitted to raise arguments on the merits of striking the allegations.