ERIC L., By and Through his next friend, Alice SCHIERBERL; Kim C., By and Through her next friend and mother, Mary C.; Jeff D., By and Through his next friend, Richard Cornelius; James K., By and Through his next friend, Ronald K. Lospennato; Julie W., By and Through her next friend, Marilyn T. Mahoney; Bruno J., By and Through his next friend, Lucinda Hopkins; Jennifer B., By and Through her next friend and father, Robert C., individually and on Behalf of all others similarly situated, Plaintiffs,

v.

Harry BIRD, Commissioner of the New Hampshire Department of Health and Human Services; Richard Chevrefils, Director of the New Hampshire Division of Children and Youth Services, Defendants.

Civ. No. 91–376–M.

United States District Court, D. New Hampshire.

March 31, 1994.

---

Ronald K. Lospennato, Bruce E. Friedman, Concord, NH, for plaintiffs.

Daniel J. Mullen, Concord, NH, for defendants.

Erica U. Bodwell, Peterborough, NH, for amicus parties.

### *ORDER*

McAULIFFE, District Judge.

Plaintiffs in this class action seek declaratory and injunctive relief under the Fourteenth Amendment to the United States Con-

stitution; the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–628, 670–678; the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–5106a; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and 42 U.S.C. § 1983 *et seq.* Defendants move to dismiss the complaint under Rule 12(b)(6), asserting that plaintiffs have failed to state claims upon which relief may be granted.

## I. Background

The named plaintiffs filed this action on behalf of themselves and all children who have been placed in foster care or some other child care arrangement outside of their homes by the New Hampshire Division of Children and Youth Service ("DCYS"), and on behalf of all children who have been abused and neglected and who are or should be known to DCYS by virtue of that abuse or neglect.

Plaintiffs assert federal statutory and constitutional violations arising from defendants' alleged failure to take the required measures to maintain the integrity of plaintiffs' families where possible, to reunite removed children with their families as soon as possible, or to place them in secure, permanent homes within an appropriate time and in an appropriate manner. Plaintiffs further allege that defendants have failed to provide services necessary to protect children in the class from harm.

The plaintiff class includes a subclass of children with disabilities. In addition to the allegations made particular to the named plaintiffs, the complaint alleges that members of the subclass of children have been subjected to discrimination based upon their disabilities.

## II. Standard of Review

■ Plaintiffs claims shall not be dismissed "unless it appears beyond doubt that [they] can prove no set of facts in support of [their] claim[s] which would entitle [them] to

relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In determining whether plaintiffs state claims entitling them to relief, the court necessarily assumes the truth of all facts pled in the complaint and indulges all reasonable inferences arising from those facts in favor of plaintiffs. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989).

## III. Discussion

### A. Constitutional Claims

Plaintiffs allege the existence and violation of certain substantive rights under the Due Process Clause of the Fourteenth Amendment to the Constitution. Specifically, they claim rights to (1) safe and humane conditions and treatment, (2) reasonable stability in foster care placement, (3) family privacy, autonomy, and association, and (4) freedom from bodily restraint.[1] Plaintiffs assert that defendants "knowingly, intentionally, and with deliberate indifference" violated these rights, and that defendants' policies and practices constitute a "substantial departure from ... accepted [standards] of professional judgment." Second Amended Complaint, ¶¶ 37–38. Plaintiffs also allege violations of their rights to procedural due process and equal protection. Second Amended Complaint, ¶ 40. They seek declaratory and injunctive relief under 42 U.S.C. § 1983.

■ To maintain an action for constitutional violations under § 1983, plaintiffs must demonstrate both that a particular constitutional right exists, and that they were deprived of that right under color of state law. *Willhauck v. Halpin,* 953 F.2d 689, 703 (1st Cir.1991). As it is undisputed that defendants acted under color of state law, the court must ascertain whether plaintiffs have asserted violations of any constitutional rights.

---

1. In their objection to defendants' motion to dismiss, plaintiffs also assert a constitutional right to be placed in the "least restrictive" setting available. Plaintiffs cite no authority which clearly supports the existence of such a right. To the extent the complaint alleges constitutional claims deriving from this theory, it must be dismissed.

### 1. Safe and Humane Conditions and Treatment

 Individuals in state confinement enjoy "constitutionally protected interests in conditions of reasonable care and safety...." *Youngberg v. Romeo*, 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982) (addressing constitutional rights of individual involuntarily committed to state custody). Although the state has no affirmative constitutional duty to protect children who are in the custody of their parents, the Supreme Court has suggested that children in foster care may be in a situation "sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201 n. 9, 109 S.Ct. 998, 1006 n. 9, 103 L.Ed.2d 249 (1989). Several circuits have in fact extended the substantive due process rights recognized in *Youngberg* to children in foster care. *See, e.g., Norfleet v. Arkansas Dep't of Human Services*, 989 F.2d 289 (8th Cir.1993) (surveying cases from the Second, Sixth, Seventh, and Eleventh Circuits). The Court of Appeals for the First Circuit has not yet addressed the issue.

This court finds persuasive the principles adopted in other circuits extending *Youngberg* to the foster care context. At this juncture, it appears that plaintiffs have stated facts sufficient to support a claim that their rights to "reasonable care and safety" while in foster care have been violated. Accordingly, defendants' motion to dismiss this claim is denied.

### 2. Stability in Foster Care Placements

 Plaintiffs rely on *K.H. through Murphy v. Morgan*, 914 F.2d 846 (7th Cir.1990), in support of their alleged right to stable foster care placements. However, in that case the Seventh Circuit concluded that such a right, if it existed, was not clearly established. *K.H. through Murphy*, 914 F.2d at 853. That court also remarked that where "the reasons for the shuttle [of children among successive foster parents] are not en-

tirely clear," they "cannot be assumed to be frivolous." *Id.*

The complaint pleads no facts tending to establish that DCYS's placement of children with successive foster parents is so devoid of justification as to give rise to a substantive violation of the Due Process Clause. Accordingly, plaintiffs' constitutional claims relating to stability in foster care placement must be dismissed.

### 3. Family Rights

 The Supreme Court has on several occasions recognized an abstract fundamental liberty interest in "family integrity." *See Frazier v. Bailey*, 957 F.2d 920, 931 (1st Cir.1992) (citing cases). This right, however, is not absolute; the government has a compelling interest in the welfare of children, and may intervene in the relationship between parent and child, provided constitutionally adequate procedures are followed. *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993) (citing *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972)).

With respect to named plaintiff Jennifer B., it appears that plaintiffs have alleged facts supporting an actionable claim sufficient to withstand a motion to dismiss under Rule 12(b)(6). *See Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992).[2]

### 4. Freedom from Bodily Restraint

 Although plaintiffs assert a right to freedom from bodily restraint, a right specifically recognized in *Youngberg*, the complaint contains no allegations that any of the named plaintiffs or members of the class have been deprived of this right. Consequently, any claims plaintiffs may have related to "bodily restraint" are hereby dismissed. *See Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 23 (1st Cir.1990) (each allegation must be supported by specific facts).

---

**2.** To the extent plaintiffs assert that the state has an affirmative constitutional obligation to provide counseling and assistance designed to maintain families intact (independent of any proce-

dural due process right), that claim is precluded by *Youngberg* and *DeShaney*. *See Youngberg*, 457 U.S. at 317, 102 S.Ct. at 2458; *DeShaney*, 489 U.S. at 196, 109 S.Ct. at 1003.

### 5. Procedural Due Process and Equal Protection

Plaintiffs allege that N.H.Rev.Stat. Ann. ch. 169–C, New Hampshire's child protection statute, creates an entitlement to certain services provided by DCYS, and they invoke due process protection against state deprivation of that entitlement. Whether state child protection statutes create such an entitlement is a question specifically left open by the Supreme Court in *DeShaney*. *See DeShaney*, 489 U.S. at 195 n. 2, 109 S.Ct. at 1003 n. 2. Under these circumstances, the court declines to dismiss plaintiffs claims at this early stage. This question would be more appropriately addressed on a motion for summary judgment after the parties have had an opportunity to develop the record and to brief the issue in greater depth.

With respect to the violation of equal protection claims, asserted on behalf of the subclass of disabled children, plaintiffs have clearly alleged facts sufficient to withstand defendants' motion to dismiss.

### B. Private Enforcement of Federal Statutes

42 U.S.C. § 1983 is properly invoked to redress violations of a federal statute, *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), if the statute creates enforceable "rights, privileges, or immunities," and if Congress has not foreclosed such enforcement in the statutory enactment itself. *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Since *Maine v. Thiboutot*, courts have struggled to describe what constitutes a statutory "right" for purposes of § 1983.

In *Golden State Transit Corp. v. Los Angeles* the Supreme Court held that an enforceable statutory "right" arises when (1) the plaintiff is an intended beneficiary of the statutory provision at issue, (2) the statute creates a binding obligation rather than merely a congressional preference for a certain kind of conduct, and (3) the plaintiff's interest is not so vague and amorphous as to be beyond the competence of the judiciary to enforce. 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). That analytical framework for identifying enforceable rights in federal statutes was reaffirmed as recently as 1990 in *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (holding the "reasonable rates" standard of the Boren Amendment, 42 U.S.C. § 1396a(1)(13)(a), enforceable under § 1983).[3]

But the *Golden State/Wilder* framework has since been called into question (if not abandoned) by the Supreme Court. *See Suter v. Artist M.*, —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). *Suter* held that § 671(a)(15) of the Adoption Assistance and Child Welfare Act ("AACWA") did not create any "rights" enforceable under § 1983 by the Act's intended beneficiaries. Section 671(a) of the AACWA provides that to be eligible for federal funding, a state "shall have a plan approved by the Secretary," which plan must include seventeen listed features. *See* 42 U.S.C. § 671(a)(1)–(17). Subsection (15) requires that the state "provide" in its plan that "reasonable efforts" will be made to prevent removal of children from their homes and to facilitate reunification of families where removal has occurred.[4] The Court held that this provision

---

**3.** The statute at issue in *Wilder* provided:

> a State plan for medical assistance must.... provide for ... payment ... of hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities....

42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V.). The Boren Amendment is one of fifty-eight features required to be included in a state plan submitted to the Secretary for approval. The Secretary is required to withhold funds if she finds that the state has failed to comply with the provisions included in its plan. 42 U.S.C. § 1396c.

**4.** If the state fails to comply with any of the provisions included in its plan, the Secretary must withdraw or reduce payments under the Act. 42 U.S.C. § 671(b).

does not unambiguously confer an enforceable right upon the Act's beneficiaries. The term "reasonable efforts" ... [imposes] only a rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary....

*Suter,* —— U.S. at ——, 112 S.Ct. at 1370. The *Suter* Court concluded that the only requirement under § 671(a) is "that the State have a plan approved by the Secretary which contains the 16 [actually seventeen] listed features." *Id.* at ——, 112 S.Ct. at 1367. The Court observed that plaintiffs' efforts to obtain relief under a different subsection, § 671(a)(9),[5] were similarly flawed because that subsection is "merely another feature which the state plan must include to be approved by the Secretary." *Id.* —— U.S. at ——, n. 10, 112 S.Ct. at 1368 n. 10.

In holding that plaintiffs stated no cause of action under § 671(a), the Supreme Court did not explicitly overrule *Golden State* or *Wilder,* but neither did it apply the analytical framework established in those cases. Justices Blackmun and Stevens dissented in *Suter,* complaining that the majority "by resurrecting arguments decisively rejected less than two years ago in *Wilder,* ... has changed the rules" with respect to § 1983 actions, thereby evidencing an "unexplained disregard for established law." *Id.* at ——, ——, 112 S.Ct. at 1371, 1377. If the majority did abandon the *Golden State/Wilder* test, it did so silently.

The Court of Appeals for the First Circuit has considered the post-*Suter* status of § 1983 actions to enforce federal statutes on two occasions. In both cases, that Court attempted to reconcile *Wilder* and *Suter* in an effort to "synthesize" a "reconfigured" framework of analysis.

In *Stowell v. Ives,* 976 F.2d 65 (1st Cir. 1992), the Court of Appeals concluded that a statute does not confer an enforceable right, post-*Suter,* unless the obligation imposed is both unambiguous and directed specifically

to the state. *Stowell,* 976 F.2d at 69–70 (holding that 42 U.S.C. § 1396a(c)(1) is not enforceable under § 1983).[6] Judge Selya, writing for the panel, described the *Suter* analysis as follows:

[T]he *Suter* Court distinguished between cases in which, on the one hand, a statutory provision is, in effect, a communication to a specific federal official whose approval is required prior to disbursement of federal funds ..., and cases in which, on the other hand, a statutory provision is, in effect, a communication from Congress to those States that elect to apply for earmarked funds....

*Id.* at 71.

The following year, the Court of Appeals decided *Albiston v. Maine Comm'r of Human Services,* 7 F.3d 258 (1st Cir.1993). In that case the Court viewed *Suter* as neither dramatically different from nor plainly inconsistent with established § 1983 jurisprudence. *Albiston,* 7 F.3d at 263. Agreeing with the panel in *Stowell* that a synthesis of *Wilder* and *Suter* was "both prudent and possible," *id.,* the Court decided that:

*Suter* left the basic *Wilder* framework intact, but added a further threshold inquiry, applicable in cases involving "federal-state funding statutes" enacted pursuant to the "Spending Clause." [citing *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17–18, 101 S.Ct. 1531, 1539–40, 67 L.Ed.2d 694 (1981)]. When federal-state funding statutes ... "fail[ ] to impose a *direct obligation on the States,* instead placing the onus of compliance with the statute's substantive provisions on the federal government, no cause of action cognizable under section 1983 can flourish."

*Albiston,* 7 F.3d at 263 (quoting *Stowell,* 976 F.2d at 70 (emphasis added)) (citations omitted). Applying this synthesis of *Wilder* and *Suter,* the *Albiston* Court held that plaintiffs *were* entitled to bring a § 1983 action to enforce a right created by a statutory re-

---

**5.** Section 671(a)(9) was amended in 1990. *See* 42 U.S.C.A. § 671(a)(9) note (1992) (Amendments). The *Suter* Court considered the earlier version of this subsection, but the amendment appears to have made no substantive changes material to the Court's analysis and holding.

**6.** The statute considered in *Stowell* provided that "the Secretary shall not approve any State plan for medical assistance" if the state has reduced AFDC payment levels below the level prevailing on May 1, 1988. Plaintiffs sought to compel an increase in payments to meet the specified level.

quirement that a state plan provide for certain AFDC payments to be furnished with "reasonable promptness." 42 U.S.C. § 602(a)(10)(A).[7]

The Court of Appeals distinguished § 602(a)(10)(A) of Title 42 from § 671(a)(15) (the "plan feature" provision held unenforceable in *Suter*), emphasizing that "[i]t is the imposition of [a] mandatory obligation[ ] directly on the States, as distinguished from the Secretary, that separates the 'promptness' obligation[ ] . . . from the statutory provisions considered in *Suter* and *Stowell*. . . ." *Albiston*, 7 F.3d at 265. As evidence of the mandatory, direct obligation imposed on the state by § 602(a)(10)(A), the *Albiston* Court pointed to § 604(a), which requires the Secretary to withhold funds for noncompliance. *See* note 7, *infra*. However, § 602(a) closely resembles § 671(a) and § 1396a(a)(13), the statutes at issue in *Suter* and *Wilder*, respectively. All three provisions contain nearly identical language—that is, a state must submit a "plan" to be "approved by the Secretary" which "provides" for certain things. Moreover, each of those statutes contains substantially similar provisions directing the Secretary to take certain measures in order to secure compliance by a state with the terms of its submitted "plan." *See* notes 3, 4, and 7, *supra*.

The Court of Appeals also distinguished "reasonable promptness" in *Albiston* from "reasonable efforts" in *Suter* in terms of the relative ambiguity of those two standards. *See Albiston*, 7 F.3d at 265, 266. But, as the Court of Appeals recognized in *Stowell*, the *Suter* holding depended only partly on the finding that "reasonable efforts" described a standard too vague, discretionary, and amorphous to be enforced against a state; *Suter* also held that the "reasonable efforts" requirement was unenforceable because it was *merely a feature to be included* in the state's

required plan and, therefore, that "feature" imposed no privately enforceable obligation on the state. *See Suter*, —— U.S. at ——, —— n. 10, 112 S.Ct. at 1367, 1368 n. 10; *Stowell* 976 F.2d at 69–70.

Plaintiffs in this case seek to enforce private rights allegedly conferred by the Adoption Assistance and Child Welfare Act, relying on subsections of the same "plan" provision considered in *Suter*, as well as other sections of that Act. In addition, plaintiffs assert claims under another federal-state funding statute, the Child Abuse Prevention and Treatment Act. In determining whether these statutes give rise to enforceable rights under 42 U.S.C. § 1983, this court finds it difficult to reconcile the holdings in *Albiston* and *Wilder* with the Supreme Court's most recent pronouncement in *Suter*.[8]

The statutory provisions at issue in each of those cases are virtually indistinguishable in terms of language and structure. Relying on that language and structure—namely, that a state must submit a "plan" which "provides" for specified features—the *Suter* Court concluded that the features specified in such a plan confer no substantive rights enforceable by private beneficiaries against the state, because the only *direct* obligation imposed on the state is the requirement to submit the plan to the Secretary. The state may well have an obligation to fulfill the commitments included in its plan, but under *Suter* it appears that that obligation is an "indirect" one, enforceable by the Secretary and not subject to private enforcement under § 1983. In *Stowell*, the Court of Appeals reiterated and declared its intent to apply *Suter*'s holding regarding the unenforceability of plan features listed in § 671(a). *See Stowell*, 976 F.2d at 69–70. The Court nevertheless concluded that *Suter* did not substantially depart from prior precedent.

---

7. The statute in *Albiston* stated that in order to receive federal AFDC subsidies, a state is required to submit a plan which must

 provide that . . . aid to families with dependent children shall . . . be furnished with reasonable promptness to all eligible individuals. . . .

 42 U.S.C. § 602(a)(10)(A). If a state fails to substantially comply with the provisions included in its plan, the Secretary is required to withdraw

or reduce subsidies to the state. 42 U.S.C. § 604(a).

8. The Seventh Circuit's effort to synthesize *Wilder* and *Suter* is not useful here and is probably distinguishable on its underlying assumptions. *See Clifton v. Schafer*, 969 F.2d 278, 284–85 (7th Cir.1992) (characterizing *Wilder* as turning on whether the state's plan was "illegal").

Judge Selya's optimism notwithstanding, it seems that, at least with regard to the AACWA, *Wilder*'s "epitaph" was indeed chiseled and planted by the *Suter* Court in 1992. *See Stowell*, 976 F.2d at 68 ("[W]e think it is much too early to post epitaphs for *Wilder* and its kin."). *Suter* may well have been, in Justice Blackmun's words, an "unexplained disregard of established law," *see Suter*, —— U.S. at ——, 112 S.Ct. at 1371, but given that it is now the established law, it is binding on this court in this case. *See, e.g., Evelyn V. v. Kings County Hospital Center*, 819 F.Supp. 183 (E.D.N.Y.1993) (surveying cases from *Maine v. Thiboutot* to *Suter*); *Baby Neal v. Casey*, 821 F.Supp. 320 (E.D.Pa.1993) (same).

Some commentators have found the *Suter* holding to be both unsatisfactory and inconsistent with congressional intent.[9] The tension between *Suter* and the *Wilder* line of cases has, of course, not gone unnoticed by Congress. In the fall of 1992, both Houses passed legislation to reverse so much of *Suter* as held that the only privately enforceable requirement of a federal funding statute is that a state *have* an approved plan. *See* 138 Cong.Rec. H12,227-01 (daily ed. Oct. 5, 1992) (text of amendment). The bill was vetoed by President Bush on November 4, 1992. Legislation seeking to overturn *Suter* has since been reintroduced, and is currently pending before Congress. *See* S. 1668, 103d Cong., 1st Sess. (1993); S. 620, 103d Cong., 1st Sess. (1993); S. 596, 103d Cong., 1st Sess. (1993).[10]

If children's rights under the AACWA and CAPTA are to be recognized as privately enforceable under § 1983, Congress will need to clarify those rights, and the available remedies, in unambiguous terms. Congress can easily do so. *Compare Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), *with* Handicapped Children's Protection Act of 1986, 20 U.S.C. § 1415(f) (West Supp.1987) (expressly overturning *Smith*); *see Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 805 F.2d 1222, 1223 (5th Cir.1986) (In response to *Smith*, Congress "acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent.").

In the meantime, this court necessarily concludes that *Wilder* has been significantly modified by *Suter*, such that now a federal spending statute cannot be said to confer a right privately enforceable under § 1983 unless, at a minimum, the "plain language" of the statute imposes a "direct obligation" on the state, in favor of intended private beneficiaries.

## 1. Adoption Assistance and Child Welfare Act

■ As discussed above, the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 620–626, 670–678, is essentially a federal funding statute, enacted pursuant to Congress's spending power. The AACWA establishes a federal reimbursement program for various expenditures made by states in administering foster care and adoption services. Plaintiffs assert that §§ 671(a) and 627(a)(2) of the Act confer rights upon them enforceable under section 1983.[11] They also claim an implied private right of action under the terms of the Act itself. Plaintiffs seek de-

---

**9.** *See, e.g.,* Leo Smith, Reducing State Accountability to the Federal Government: The *Suter v. Artist M.* Decision to Dismiss Section 1983 Claims for Violating Federal Funding Mandates, 1992 Wis.L.Rev. 1267 (1992); Lisa L. Frye, Note, *Suter v. Artist M.* and Statutory Remedies Under Section 1983: Alteration Without Justification, 71 N.C.L.Rev. 1171 (1993).

**10.** The text of the proposed amendment is as follows:

Effect of failure to carry out State plan

Sec. 1130. In an action brought to enforce a provision of the Social Security Act, such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in *Suter v. Artist M.*, [—— U.S. ——] 112 S.Ct. 1360 [118 L.Ed.2d 1] (1992), but not applied in prior Supreme Court decisions respecting such enforceability: Provided, however, that this section is not intended to alter the holding in *Suter v. Artist M.* that section 471(a)(15) of the Act is not enforceable in a private right of action.

S. 1668, 103d Cong., 1st Sess. (1993).

**11.** Plaintiffs' complaint also refers to §§ 625 and 675. These sections are merely definitional and cannot supply a firm basis for describing rights privately enforceable under section 1983.

claratory and injunctive relief including: (1) implementation of a case plan for each child; (2) development of a service program for each child; (3) implementation of a case review system for each child; (4) reduction in the number of children in long-term foster care; (5) implementation of a statewide information system; and (6) operation of foster care and child care programs in accordance with national standards.

Pursuant to § 671(a) of the AACWA, a state is required to submit a plan to the Secretary of Health and Human Services for approval. The plan must contain all of the seventeen features listed in § 671(a). 42 U.S.C. § 671(a)(1)–(17). Plaintiffs do not claim that New Hampshire lacks such a plan. Instead they argue that although New Hampshire has applied for and accepted federal funds to enable it to carry out its plan obligations, New Hampshire is not in fact fulfilling its plan obligations. Plaintiffs seek to force the state to do what it committed itself to do in its own plan. They rely specifically on subsections (9), (10), (11), (14), and (16) of § 671(a).

Plaintiffs' claims are foreclosed by the decision in *Suter v. Artist M.*, discussed above. Like subsection (15), each of the subsections relied upon is "merely another feature which the state plan must include to be approved by the Secretary," and does not create an enforceable right. *Suter*, —— U.S. at ——, —— n. 10, 112 S.Ct. at 1367, 1368 n. 10; *see Baby Neal v. Casey*, 821 F.Supp. 320 (E.D.Pa.1993) (dismissing § 1983 action based on § 671(a)(10)); *cf. Lynch v. Dukakis*, 719 F.2d 504 (1st Cir.1983) (pre-*Suter* decision approving § 1983 cause of action for violations of § 671(a)(16)).

■ Section 627(a) establishes requirements a state must meet in order to qualify for federal funding above a specified level. *See also* 42 U.S.C. § 620. Under § 627(a)(2), a state is not eligible for additional federal funding unless it:

has implemented and is operating *to the satisfaction of the Secretary*—

(A) a statewide information system from which the status, demographic characteristics, location, and goals for the placement of every child in foster care or who has been in such care within the preceding twelve months can readily be determined;

(B) a case review system (as defined in section 675(5) of this title) for each child receiving foster care under the supervision of the State; and

(C) a service program designed to help children, where appropriate, return to families from which they have been removed or be placed for adoption or legal guardianship.

42 U.S.C. § 627(a)(2)(A)–(C) (emphasis added). Satisfactory implementation of the listed programs, like compliance with plan features in § 671(a), is a condition of continued funding. Section 627(b) provides that a state's funding shall be reduced to a defined level if it fails to fulfill the conditions of § 627(a)(2).

Plaintiffs seek to compel New Hampshire's full implementation of the programs referred to in § 627(a)(2). However, that statutory provision speaks in terms of "eligibility" for funds based on the fulfillment of certain obligations "to the satisfaction of the Secretary." The statute directs the Secretary to make appropriate eligibility determinations and to withhold funds for noncompliance; it places no direct obligation on the state. *Stowell*, 976 F.2d at 71. Therefore, plaintiffs enjoy no enforceable rights under this provision.[12]

### 2. Child Abuse Prevention and Treatment Act

■ Plaintiffs also assert rights allegedly conferred by CAPTA under § 1983. Like the AACWA, the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–5106a, is a federal funding statute enacted pursuant to Congress's spending power. Specifically, plaintiffs allege violations of as-

---

12. Plaintiffs also cite § 672 as creating rights enforceable under § 1983. However, the relief plaintiffs seek is not available under any part of § 672. *See* Second Amended Complaint, ¶ 37. To the extent § 672, is an "integrated" part of the AACWA, *see* Plaintiffs' Objection at 21, and "refers to" the provisions of § 671(a), *see id.* at 20, the alleged rights are unenforceable, as held in *Suter.*

serted rights to: (1) prompt investigation of reports of abuse or neglect; (2) services designed to aid abused or neglected children and to prevent abuse or neglect; and (3) compliance with the requirements of N.H.Rev.Stat.Ann. ch. 169–C and relevant state policies, incorporated in the Act. *See* Second Amended Complaint, ¶ 38.

Plaintiffs rely on § 5106a(b) which provides in relevant part that

[i]n order for a State to qualify for a [federal] grant ... such State shall—

(1) have in effect a State law relating to child abuse and neglect, including—

(A) provisions for the reporting of known and suspected instances of child abuse and neglect; and

. . . .

(3) demonstrate that there are in effect throughout the State, in connection with the enforcement of child abuse and neglect laws and with the reporting of suspected instances of child abuse and neglect, such [procedures, trained personnel, facilities, programs, and services] as may be necessary or appropriate to ensure that the State will deal effectively with child abuse and neglect cases in the State.

42 U.S.C. § 5106a(b)(1)(A), (b)(3).

Plaintiffs do not contend that New Hampshire has no child protection laws of the sort required in § 5106a(b). Instead, they argue that these state laws are not "in effect" because the state does not "effectively" enforce them. *See* Plaintiffs' Objection at 30. Plaintiffs invoke § 1983 as a means of obtaining "effective enforcement" of state laws required to be "in effect" as a condition of funding under this federal program.

The *Suter* Court rejected a similar argument, holding that the phrase "in effect" in § 671(a)(3) refers to the *applicability* of the state's plan, but does not otherwise create any binding obligations. *Suter,* —— U.S. at ——, 112 S.Ct. at 1368. Likewise, § 5106a(b) only requires that New Hampshire enact the specified child abuse laws in order to qualify for federal funds under the Act. *See also Jensen v. Conrad,* 570 F.Supp. 91, 112–13 (D.S.C.1983) (holding identical provision of CAPTA unenforceable under

§ 1983), *aff'd,* 747 F.2d 185 (4th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985); *Baby Neal,* 821 F.Supp. at 328–29. Plaintiffs claims under CAPTA are also necessarily dismissed.

## C. Section 504 of the Rehabilitation Act

 Plaintiffs advance claims on behalf of the subclass of disabled children under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Section 504 states in pertinent part:

No otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a). In order to state a claim under this provision, plaintiffs must allege that (1) they are disabled as defined by the statute; (2) they are otherwise qualified for the program, activity, or benefit at issue; (3) they have been excluded from the program, activity, or benefit solely by reason of their disabilities; and (4) the program, activity, or benefit is funded by federal financial assistance. *See I.D. v. Westmoreland School District,* 788 F.Supp. 634, 639 (D.N.H.1992).

 Defendants concede that the defined subclass of disabled children are in fact "disabled" within the meaning of § 504, and that DCYS receives federal assistance. *See* Defendants' Motion at 21. Plaintiffs allege that DCYS discriminates against these children by segregating them in institutions which isolate them from non-disabled children, and by denying them services and placement opportunities comparable to those available to non-disabled children. *See* Second Amended Complaint, ¶¶ 43–46.

Plaintiffs' complaint does contain allegations sufficient to support each of the four elements comprising a claim under § 504 of the Rehabilitation Act, and appears to describe specific and representative facts which, if proven, would support a cause of action under § 504. In any event, the court cannot find at this early juncture that plain-

tiffs could not recover under any set of facts alleged in the complaint. *See Garita Hotel Ltd. Partnership*, 958 F.2d at 17. Accordingly, defendants' motion to dismiss the § 504 claims must be denied.

### D. Americans with Disabilities Act

 Plaintiffs also claim violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, on behalf of the subclass of children with disabilities. Section 12132 of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The ADA establishes rights similar to those protected by § 504. In fact, as defendants acknowledge, the ADA affords broader protection than § 504 because it prohibits discrimination by state agencies regardless of whether they receive federal funds. *See* Defendants' Motion at 28–29.

For the reasons stated in Part III.C., *supra*, defendants' motion to dismiss plaintiffs' ADA claims must also be denied.

### IV. Conclusion

Defendants' motion to dismiss (document no. 34) is *granted* with respect to plaintiffs' claims under the Adoption Assistance and Child Welfare Act and the Child Abuse Prevention and Treatment Act. *See* Second Amended Complaint, Counts II and III. Some of plaintiffs' constitutional claims are also dismissed. *See* Part III.A., *supra*; Second Amended Complaint, Count I.

The motion to dismiss is *denied* with respect to plaintiffs' remaining claims under the Fourteenth Amendment, and under § 504 of the Rehabilitation Act and the Americans with Disabilities Act. *See* Part

III.A., *supra*; Second Amended Complaint, Counts I, IV, and V.

SO ORDERED.