**E.F., A Minor, By and Through MISSISSIPPI PROTECTION AND ADVOCACY SYSTEM, INC., as Guardian Ad Litem, et al., Plaintiffs,**

v.

**Dr. Brenda SCAFIDI, In Her Official Capacity as Director, Division of Children and Youth Services, Department of Mental Health, et al., Defendants.**

Civ. A. No. 3:91–CV–591(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

April 21, 1994.

---

Robert E. Sanders, Geoffrey C. Morgan, Mississippi Atty. Gen.'s Office, J. Perry Sansing, Brunini, Grantham, Grower & Hewes, Jackson, MS, James H. Heidelberg, Colingo, Williams, Heidelberg, Steinberger & McElhaney, Pascagoula, MS, Richie E. Perkins, Moss Point, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants to reconsider this court's opinion of August 12, 1993 granting plaintiffs' motion for class certification. Plaintiffs have responded to defendants' motion and have additionally moved to amend their complaint to charge that defendants have violated the Adoption Assistance and Child Welfare Act, as amended (AACWA), 42 U.S.C. §§ 620–628 and §§ 651–658. The court has considered each of the motions and concludes that both should be denied.

As to defendants' motion for reconsideration, the court, at this juncture, remains of the view that a class was properly certified, though the court does recognize, at the same time, that there exist probable issues concerning plaintiffs' right to relief under certain of the various statutes alleged by plaintiffs to have been violated.[1] The court does anticipate that these issues will at some point in time be presented to the court for full consideration by way of a defense motion to dismiss and/or for summary judgment. It is the court's opinion that those issues, which are addressed to the viability of plaintiffs' specific causes of action, are better suited to and will be more appropriately considered and resolved in that context rather than on the present motion.[2]

With respect to plaintiffs' motion to amend, the court concludes that the amendment proposed by plaintiffs should be denied for the reason that the AACWA does not

Shirley Payne, Horn & Payne, Jackson, MS, for plaintiffs.

1. For example, there are questions of whether plaintiffs have fulfilled the exhaustion requirements of some of the statutes, and whether they have a private right of action or enforceable rights under others.

2. The court is aware of the possibility that a decision on the viability of plaintiffs' various claims may affect the definition of the class, but concludes that alteration of the class definition at this time, based on the viability of plaintiffs' claims (i.e., whether they have a private right of action under a given statute or whether they have exhausted under another statute) would essentially place the cart before the horse.

confer on plaintiffs any right which is enforceable under § 1983.[3] It is well established that individuals can sue under § 1983 for violations of statutory as well as constitutional rights. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, § 1983 can be used to enforce statutory violations only if the statute creates " 'enforceable rights, privileges, or immunities within the meaning of § 1983,' " and " 'Congress has not foreclosed such enforcement of the statute in the enactment itself.' " *Suter v. Artist M.,* — U.S. ——, ——, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992) (quoting *Wright v. Roanoke Redev. and Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). In *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), and subsequently in *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990), the Court concluded that a right enforceable under § 1983 arises when (1) the plaintiffs are intended beneficiaries of the statutory provision at issue, (2) the statute imposes a binding obligation rather than merely a congressional preference for a certain kind of conduct, and (3) the plaintiffs' interest is not so vague and amorphous as to be beyond the competence of the judiciary to enforce. *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448; *Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517.

Recently, however, in *Suter v. Artist M.,* — U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Court appears to have modified the *Wilder* test, or arguably to have abandoned it altogether. In *Suter,* the Court held that § 671(a)(15) of the AACWA did not create "rights" enforceable under § 1983 by the Act's intended beneficiaries. That particular section provided that a state, to be eligible for federal funding, "shall have a plan approved by the Secretary" of Health and Human Services, which plan was required to include sixteen listed features. Among other things, the plan was required to provide that "reasonable efforts" would be made to pre-vent the removal of children from their homes and to facilitate the return of children in foster care to their homes. The Court found that this provision granted the Act's beneficiaries no enforceable "right" since the term "reasonable efforts," when read in the context of the Act, did not unambiguously confer such a right. Rather, it "impose[d] only a generalized duty on the states, which is enforceable by the Secretary." *Suter,* — U.S. at ——, 112 S.Ct. at 1370. The use of the phrase "reasonable efforts," with no further guidance for measuring the state's obligation, gave the states considerable discretion in implementing their plans such that the obligations of the states *vis a vis* implementation was subject only to a vague and amorphous standard which was not susceptible of measurement.

The indefiniteness of the phrase "reasonable efforts," however, was only part of the basis for the Court's conclusion that the Act created no right enforceable under § 1983. Even though the Act was mandatory in its terms, the only requirement that the Act actually imposed was that the state have a plan approved by the Secretary which included the listed features. *Id.* at ——, 112 S.Ct. at 1368. The Court explained,

> the Act does place a requirement on the States, but that requirement only goes so far as to ensure that the State have a plan approved by the Secretary which contains the 16 listed features.

*Id.* at ——, 112 S.Ct. at 1367. This point was again reiterated:

> The regulations promulgated by the Secretary to enforce the Adoption Act do not evidence a view that § 671(a) places any requirement for state receipt of federal funds other than the requirement that the State submit a plan to be approved by the Secretary.

*Id.* at ——, 112 S.Ct. at 1369.

In reaching the conclusion that no right was created by the statute, the *Suter* Court did not purport to follow the *Wilder* frame-

---

**3.** It appears that plaintiffs seek to allege that defendants' alleged violation of their putative rights under the AACWA is actionable as a violation of § 1983. However, even if they seek to allege a cause of action directly under the AACWA, the court would conclude that they could not proceed under that Act as the Act does not grant a private right of action. *See Suter v. Artist M.,* — U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

work. Instead, the Court focused on whether the statute "unambiguously conferred" a right on the plaintiffs by imposing sufficiently mandatory and definite obligations on a state. *Suter's* impact on the *Wilder* analysis has been the subject of much discussion and debate. Many courts have questioned the continued viability of the *Wilder* framework in light of *Suter*. *See, e.g., Resident Council of Allen Parkway Village v. HUD,* 980 F.2d 1043, 1051 (5th Cir.1993). Some of these courts, including the Fifth Circuit, have managed to avoid a decision as to the precise effect of *Suter*. *See, e.g., Allen Parkway Village,* 980 F.2d at 1052 (unnecessary to decide effect of *Suter* because statute at issue did not create federally enforceable right even under *Wilder* framework). And while there is no consensus, of those facing the question head on, most have attempted to "synthesize" the cases so as to effect a modified *Wilder* framework. *See, e.g., Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 525 (8th Cir.1993) ("[W]e choose to synthesize the two cases by proceeding with the [*Wilder* analysis,] bearing in mind the additional considerations mandated by *Suter*"); *Marshall v. Switzer,* 10 F.3d 925, 928 (2d Cir.1993) (analyzing under *Wilder* test but observing that under *Suter,* statutory provision which grants states significant discretion in meeting statute's objectives is less likely to create enforceable rights); *Albiston v. Maine Comm'r of Human Servs.,* 7 F.3d 258, 263 (1st Cir.1993) (*Suter* left basic *Wilder* framework intact, but added further threshold inquiry, applicable in cases involving federal-state funding statutes enacted pursuant to Spending Clause). While the court expresses no opinion on what the effect of *Suter* might be in other cases, the court is persuaded that *Suter* controls the resolution of whether the plaintiffs in this case have "rights" under the AACWA.

■ In their motion to amend, plaintiffs have not identified the specific provisions of the AACWA which they contend have been violated. They allude to many sections of the Act, which cover a variety of topics, from child welfare services to foster care to child support, and state that they wish to charge a violation of all of these provisions. However, given the breadth of the Act, and the fact

that a serious and obvious question is presented from the outset as to whether plaintiffs may claim any "rights" under the Act, or any of its provisions, the court must conclude that a proposed amendment which seeks to allege a generalized violation of the Act will not suffice.

■ Though, as stated, the plaintiffs' motion is rather broad and vague as to the amendment sought to be made, plaintiffs have referred in their memoranda to a few specific provisions of the Act which they contend create specific and enforceable rights. These references suggest, at least in part, what they seek to add to their complaint by amendment. In this regard, plaintiffs argue that "[t]he Act now requires that clearly defined actions must occur," and cite the following examples:

> For example: Section 431(a)(1) Family Preservation Services, is designed to (A)(1) return foster children to their homes, or (2) allow children to be placed in planned, permanent living arrangements, (B) help children remain with their families, (C) provide follow up care, (D) provide respite care, (E) secure parenting skills, with help in such matters as child development, family budgets, coping with stress, health and nutrition, and (2) community services. Section 432(a)(3) "provides for coordination, to the extent feasible and appropriate, of the provision of services under the plan and the provision of services of benefits under other Federal or federally assisted programs serving the same populations."

The court is compelled to conclude based on *Suter* that these provisions of the AACWA upon which plaintiffs' proposed amendment is based, in part, do not "unambiguously confer" on plaintiffs any "rights" which are enforceable under § 1983.

Plaintiffs recognize that under *Suter,* statutory language drawn so broadly as to require "appropriate" treatment or "reasonable efforts" is merely precatory, and thus too vague to be rendered enforceable under the spending powers when the meaning of such terms cannot be derived from a reading of the statute. They argue, however, that Congress has effectively cured the deficiencies in

the AACWA identified in *Suter* by amending the Act to make more specific and definite the obligations imposed on states. These amendments, plaintiffs contend, supplant the "reasonable efforts" provision found inadequate by the *Suter* Court to create a right enforceable by way of private action under § 1983. They maintain that the cited provisions "are all specific quid pro quo requirements" and that the Act, therefore, now imposes sufficiently mandatory and specific requirements on the states to warrant the conclusion that they create enforceable rights and entitlements to children's protective services. The court cannot agree. After a careful review of the entire text of the AACWA, with particular attention to the provisions to which plaintiffs have alluded, as required by *Suter, see* —— U.S. at ——, 112 S.Ct. at 1368 (specific statutory provisions at issue as well as entire legislative enactment should be analyzed to determine whether those provisions create enforceable right within meaning of § 1983), the court is unable to discern any appreciable distinction in the nature of the new provisions cited by plaintiffs and those considered in *Suter.*

The part of the Act to which plaintiffs' brief refers is addressed to family preservation and support services. This part, and more particularly §§ 629a and 629b, includes the specific provisions cited by plaintiffs, *supra.* Section 629a defines "family preservation services" as services for children and families designed to return foster children to their homes, or allow children to be placed in planned, permanent living arrangements; to provide followup care to families to whom a child has been returned after foster care placement; to provide respite care; to improve parenting skills, with help in such matters as child development, family budgets, coping with stress, health and nutrition. The section further defines "family support services" to include community-based services to promote the well-being of children and families. Section 629b establishes the requirements that state plans for family preservation and support services must include to secure approval from the Secretary and requires, *inter alia,* that such plans must include a provision for the "coordination, to the extent feasible and appropriate, of the provi-

sion of services under the plan and the provision of services or benefits under other Federal or federally assisted programs serving the same population." The Secretary is charged to approve plans which comply with the listed requirements and to periodically evaluate the effectiveness of state plans.

Section 629a is definitional only and thus does not of itself confer any rights on the plaintiffs. With reference to § 629b, the only requirement actually imposed on states under that section is of the very same nature as that considered by *Suter* to be inadequate to support a finding of any "right" by the plaintiffs. This section requires only that any plan for family preservation and support services, which is devised and submitted for approval by the Secretary as a condition to the receipt of federal funds, include the criteria identified. Further, the only plan feature which plaintiffs have specifically cited requires that such plans provide for coordination of services "to the extent feasible and appropriate." The Act provides no guidance as to the standard for gauging what is "feasible and appropriate," and in this court's view, this language is no more specific than the "reasonable efforts" language considered in *Suter.*

In a similar case, *Eric L. v. Bird,* 848 F.Supp. 303 (D.N.H.1994), the plaintiffs, as do plaintiffs in the case at bar, sought recognition of rights, enforceable in an action brought under § 1983, for a state's alleged violation of certain provisions of the AACWA. The court concluded that the plaintiffs were foreclosed by *Suter* from pursuing their action, since "each of the subsections relied upon is 'merely another feature which the state plan must include to be approved by the Secretary,' and does not create an enforceable right." *Id.,* at 312 (quoting *Suter,* —— U.S. at ——, —— n. 10, 112 S.Ct. at 1367, 1368 n. 10) (additional citations omitted). The court expressed its view that, at least with respect to the AACWA, *"Wilder* has been significantly modified by *Suter,* such that now a federal spending statute cannot be said to confer a right privately enforceable under § 1983 unless, at a minimum, the 'plain language' of the statute imposes a direct obligation on the state, in favor

of intended private beneficiaries." *Id.*, at 311. Thus,

> at least with regard to the AACWA, *Wilder*'s 'epitaph' was indeed chiseled and planted by the *Suter* Court in 1992. *See Stowell* [*v. Ives,*] 976 F.2d [65] at 68 [1st Cir.1992] ("We think it is much too early to post epitaphs for *Wilder* and its kin."). *Suter* may well have been, in Justice Blackmun's words, an "unexplained disregard of established law, *see Suter* [—— U.S. at ——], 112 S.Ct. at 1371, but given that it is now the established law, it is binding on this court in this case.

*Eric L.*, 848 F.Supp. 303, 311. This court is in accord with this assessment of *Suter*'s impact on the case *sub judice. See also Baby Neal .v. Casey,* 821 F.Supp. 320 (E.D.Pa.1993) (provisions of AACWA which dictated components which state plan must include to be approved by Secretary to receive funding did not create enforceable rights).

Though Congress may well have intended to "reenact" the AACWA, as plaintiffs contend, to overcome the effects of *Suter* so that children's rights under the AACWA would be recognized as privately enforceable under § 1983, it has not been sufficiently clear and specific to accomplish this result. That is, it has not "clarif[ied] those rights, and the available remedies, in unambiguous terms." *Eric L.*, at 311. The court must conclude, therefore, that plaintiffs have not identified any provision of the Act which confers on them any "right" enforceable under § 1983.

Accordingly, it is ordered that plaintiffs' motion to amend is denied. It is further ordered that defendants' motion for reconsideration is denied.

ORDERED.