DANIEL H., an infant, by his father and natural guardian HARDAWAY H., and Hardaway H., individually, and on behalf of all others similarly situated, Plaintiffs,

v.

CITY OF NEW YORK; Monique Gibbs, individually, and as caseworker Child Welfare Administration; D. Collins, individually, and as supervisor, Child Welfare Administration; B. Battle, individually, and as supervisor, Child Welfare Administration; Barbara Sabol, individually and as Administrator of the Human Resources Administration, and as Commissioner of the New York City Department of Social Services; Robert Little, Executive Deputy Commissioner, Child Welfare Administration; Diahan Scott, individually, and as caseworker, St. Dominic's Home; Carla Ortiz, individually, and as caseworker, St. Dominic's Home; Matthew Sullivan, individually, and as caseworker, St. Dominic's Home; Nancy Breen, individually, and as supervisor, St. Dominic's Home; Bonni Rucker, individually, and as Director, St. Dominic's Home; St. Dominic's Home, Marva Livingston Hammons, Administrator of the Human Resources Administration and Commissioner of the New York City Department of Social Services; Kathryn Croft, Deputy Director of the New York City Administration for Children's Services; and Nicholas Scoppetta, Director of the New York City Administration for Children's Services, Defendants.

No. 96 Civ. 1605(VM).

United States District Court,
S.D. New York.

Sept. 27, 2000.

Hardaway H., Hill, Betts & Nash, New York City, Bruce A. Young, Law Offices Bruce Young, New York City, for Daniel H., plaintiff.

Bruce A. Young, Law Offices of Bruce Young, New York, NY, for Hardaway H., plaintiff.

James A. Girillo, Paul A. Crotty, Corporation Counsel of the City of NY, New York City, for City of New York, Monique Gibbs, D. Collins, B. Battle, Marva Livingston Hammons, Kathryn Croft, Nicholas Scoppetta, defendants.

Christine Ardita, Mendes & Mount, New York City, for Diahan Scott, Carla Ortiz, Matthew Sullivan, Nancy Breen, Bonnie Rucker, St. Dominic's Home, defendants.

## DECISION AND ORDER

MARRERO, District Judge.

In this action pursuant to 42 U.S.C. § 1983, plaintiffs Daniel H. and Hardaway H. have named as defendants in three of their nine claims the St. Dominic's Home ("St.Dominic's"), a not-for-profit foster care placement agency, and five of its supervisors and caseworkers (the "St. Dominic Defendants"). The other claims are brought against the City of New York (the "City") and various officials of its children's services agencies. The St. Dominic Defendants' motion for summary judgment related to the three claims against them is presently before the Court. For the reasons set forth below, the Court grants the motion in part and denies it in part.

## BACKGROUND

Hardaway H. is the biological father and now guardian of Daniel H., who was born on June 22, 1984. St. Dominic's is a private, not-for-profit social welfare agency administered by the Sisters of Saint Dominic of Blauvelt, New York, that is certified by the New York State Department of Social Services to provide, among other things, foster care placement in New York City. During the time period relevant to this action, St. Dominic's provided state-licensed foster care placement for children removed from their homes by the New York Family Court ("Family Court") and the Child Welfare Agency ("CWA"), a former department of the New York City Human Resources Administration; con-tracted with CWA to provide foster care for children in New York City; and was contractually obligated to report to CWA all of its services rendered.

In July 1991, Daniel H., then seven years old, was removed from his biological mother's home following Family Court findings of abuse and neglect. Hardaway H., having separated from his wife in December 1987 or in early 1988, was not living with Daniel H. or his son's mother at the time of Daniel H.'s removal. St. Dominic's, to which Daniel H. was referred by the City, placed the child in the care of a state-licensed foster home. Daniel H. remained in foster care until being reunited with Hardaway H. in February 1995. The allegations in the complaint relate to, among other things, the St. Dominic Defendants' alleged failure to notify Hardaway H. of his son's foster care placement so that Hardaway H. could obtain the return of Daniel H. and protect his son from injuries he allegedly sustained in foster care.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The role of the Court is to determine whether there are any genuine issues of material fact to be tried, not to decide them (*see Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d. Cir.1994)), while resolving ambiguities and drawing all reasonable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden and is required to identify those portions of the "pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, [that] show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The party opposing the motion must then demonstrate that there exists a genuine dispute as to material facts, but cannot rely solely on pleadings or conclusory factual allegations. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the opposing party must present specific evidence supporting its contention that there is a genuine issue of material fact. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). To show such a genuine dispute, the opposing party must proffer sufficient evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.[1]

## II. *REVIEW OF THE CLAIMS*

### A. *The Fifth Claim*

Plaintiffs argue that section 675 and three subsections of section 671 of the Adoption Assistance Act (the "Act") create an implied private right of action under 42 U.S.C. § 1983. *See* Compl. ¶¶ 98–113; Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, dated Dec. 15, 1999 ("Plaintiffs' Memo"), at 19–21. The St. Dominic Defendants contend that plaintiffs have no private right of action for alleged violations of the Act. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, dated July 19, 1999 ("Defendants' Memo"), at 7–11; Defendants' Reply Memorandum in Support of Motion for Summary Judgment, dated Jan. 20, 2000 ("Reply Memo"), at 2–4.

The Act establishes a federal reimbursement program for certain expenditures made by states in administering foster care and adoptive services. A state is required, pursuant to section 671(a) of the Act, to submit a plan for approval by the Secretary of Health and Human Services which contains seventeen features listed in section 671(a) and which, in relevant part,

(10) provides for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, and provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part or part B of this subchapter;

(11) provides for periodic review of the standards referred to in the preceding paragraph and amounts paid as foster care maintenance payments and adop-

---

1. In reviewing all of the motion papers submitted by the parties in connection with this motion, the Court had some observations regarding plaintiffs' Rule 56.1 Statement (the "Statement") that it wishes to note. The Statement is not, as required by Local Civil Rule 56.1, a "short and concise statement of the material facts." Instead, it is a forty-three page document with 142 numbered paragraphs. More troubling, however, is that the

Statement, rather than a factual recitation, is loosely prepared, replete with inappropriate argument, some of it expressed in the first person by Hardaway H., and some presumably prepared by his attorney, and contains many errors and gaps. As this case now readies for trial, the Court warns plaintiffs' counsel to review all future work product prior to service and filing and to comply with this Court's Individual Practices.

tion assistance to assure their continuing appropriateness; ... [and]

(16) provides for the development of a case plan (as defined in section 675(1) of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in section 675(5)(B) of this title with respect to each such child.

42 U.S.C. § 671(a)(10), (11) & (16).[2]

Section 1983 provides a cause of action against anyone who, under color of state law, deprives a person "of any rights, privileges or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. As the statutory language makes clear, in order to state a cause of action under Section 1983, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *See Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

■ The Second Circuit has found that "[t]o determine whether a private right of action exists under a federal statute, a plaintiff must show that the statute is: (1) "intended to benefit" the plaintiff seeking to enforce it; (2) a "binding obligation on the government unit," rather than "merely a congressional preference for a certain kind of conduct;" and (3) not so "vague and amorphous" as to be "beyond the competence of the judiciary to enforce." " *See Rodriguez v. DeBuono,* 162 F.3d 56, 60 (2d Cir.1998) (quoting *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)). Once a plaintiff demonstrates that a federal statute creates an individual right, "there is only a rebuttable presumption that the right is enforceable under § 1983." *See Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. A plaintiff's claim may fail if the defendant can demonstrate that Congress intended to foreclose a remedy un-

der Section 1983 "expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme incompatible with enforcement under § 1983." *See id.* (citing *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)).

Applying the *Wilder* factors, the Court finds that subsections (a)(10), (11) and (16) of section 671 were enacted by Congress to protect children in state foster care and that plaintiffs were among the persons intended to benefit from these provisions. The Court further believes that these provisions impose a clear, binding obligation on the states because section 671(a)(3) provides that "the plan shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." *See McMahon v. Tompkins County Dep't of Soc. Servs.,* No. 95 Cv. 1134, 1998 WL 187421, at *7 (N.D.N.Y. April 14, 1998) (Pooler, J.) (quoting 42 U.S.C. § 671(a)(3)).

■ The Court, however, concludes that, to the extent these provisions of the Act may have been intended to confer an individual benefit, it is expressed in language too imprecise to be judicially enforced. *See Blessing,* 520 U.S. 329, 117 S.Ct. 1353. *See also Yvonne L. v. New Mexico Dep't of Human Servs.,* 959 F.2d 883 (10th Cir.1992); *Eric L. v. Bird,* 848 F.Supp. 303 (D.N.H.1994); *Baby Neal v. Casey,* 821 F.Supp. 320 (E.D.Pa.1993); *Mark G. v. Sabol,* 247 A.D.2d 15, 677 N.Y.S.2d 292 (1st Dep't 1998), *aff'd,* 93 N.Y.2d 710, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (1999). In addition, section 671 "pertain[s] to the relationship between the federal government and the states" and has been found to impose no enforceable obligations upon the City of New York. *See Marisol A. v. Giuliani,* No. 95 Civ. 10533, 1998 WL 265123, at *11 (S.D.N.Y. May 22, 1998). If city defendants may not be lia-

---

**2.** The complaint herein cites to "42 *United States Code,* Section 671 (10 & 11)" (*see* Compl., ¶ 101); "42 U.S.C., Section 671(16)" (*see id.,* ¶ 103); and "42 U.S.C. 671(16)." *See*

*id.,* ¶ 110. The Court presumes that each of these citations should have referred to subsection (a) of section 671.

ble, then, *a fortiori*, St. Dominic Defendants herein cannot be liable under the facts before the Court.

Finally, this Court finds persuasive and particularly appropriate the conclusions recently reached by the District Court in New Jersey where that court observed that

> both parties have failed to note the important point, which hinders Plaintiffs' claim under 42 U.S.C. § 671(a)(16) with respect to case plans, that Congress specifically examined the numerous State plan elements required under 42 U.S.C. § 671 and determined that only one such required element confers a private right enforceable pursuant to § 1983. Specifically, in 1996, Congress amended 42 U.S.C. § 674 by adding subsection (d) which explicitly provides that "[a]ny individual who is aggrieved by a violation of Section 671(a)(18) of this title by a State or other entity may bring an action seeking relief from the State or other entity in any United States district court." 42 U.S.C. § 674(d)(3)(A) (emphasis added). That Congress recently chose to amend 42 U.S.C. § 1983 for a state or other entity's failure to comply with 42 U.S.C. § 671(a)(18), but did not include the other various elements enumerated in 42 U.S.C. § 671(a) and relied upon by Plaintiffs, is strong evidence that Congress did not intend these other various State plan elements in 42 U.S.C. § 671(a) to confer rights enforceable pursuant to § 1983.

*Charlie H. v. Whitman*, 83 F.Supp.2d 476, 489 (D.N.J.2000). Accordingly, the Court holds that plaintiffs do not have an implied private right of action under 42 U.S.C. § 1983 for violations of the Act.

### B. *The Sixth Claim*

Plaintiffs "concede that their Sixth Cause of Action alleging a private right of action under Title 4 of the *New York State Social Services Law* is no longer viable" in light of the New York Court of Appeals' decision in *Mark G. v. Sabol*, 93 N.Y.2d 710, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (1999). *See* Declaration of Bruce A. Young in Opposition, sworn to Dec. 15, 1999, ¶ 6; Plaintiffs' Memo at 17.

Plaintiffs, however, request leave "to replead the essential facts of their 6th claim." *See id.*, ¶ 7; Plaintiffs' Memo at 17–19. The Court declines to exercise its discretion and denies the request to amend. This case was commenced in 1996; extensive fact and expert discovery has been conducted, including document production of "over a thousand pages" and the "depositions of multiple employees of the municipal defendants, seven St. Dominic's employees as well as the foster family" (*see* Reply Memo at 5–6), all of which "was completed during the Spring of 1999." *See* Joint Letter of the Parties to the Court, dated Feb. 24, 2000. This case is now ready for trial, and further delay would seriously prejudice all defendants in this action. Accordingly, plaintiffs' request to file an amended complaint is denied.

### C. *The Ninth Claim*

The St. Dominic Defendants have further sought summary judgment in connection with the allegations of "the Complaint's Ninth Claim … that the conduct of the defendants was violative of the New York State and United States Constitutions." Defendants' Memo at 15; Compl. ¶¶ 143–147. Plaintiffs maintain that the St. Dominic Defendants acted in a constitutionally inadequate manner. *See* Plaintiffs' Memo at 21.

#### 1. *Equal Protection Claim*

Plaintiffs claim that "HARDAWAY H. had equal rights to notice and an opportunity to be heard and to plan and visit with his children as did the mother" (Plaintiffs' Memo at 22); that "HARDAWAY H. was treated differently as a father based on his gender for no lawful purpose or governmental objective" (*id.*); and that "the St. Dominics's [sic] defendants contributed and participated with the City of New York defendants in violation of plaintiff's right to equal protection." *Id.*

The Second Circuit has held that the equal protection clause "directs state actors to treat similarly situated people alike." *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995). To prove a violation of this clause, a plaintiff is required to prove "purposeful discrimination directed at an identifiable or suspect class." *See id.* (citations omitted).

Here, assuming without deciding that plaintiff Hardaway H. belongs to a suspect class, plaintiffs have presented no evidence of purposeful discrimination by St. Dominic Defendants or of purposeful discrimination directed at the class in which Hardaway H claims to be a member. Accordingly, plaintiffs' equal protection claim is insufficient to withstand a motion for summary judgment

### 2. *Fourth Amendment*

The Fourth Amendment inquiry requires the Court to determine whether the St. Dominic Defendants' actions were objectively reasonable in light of the facts and circumstances. *See Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining the reasonableness of a seizure, "the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

▆ In this case, plaintiffs argue that "the child DANIEL was seized and unreasonably detained [in foster care] due to the failure to notify his father." Plaintiffs' Memo at 23. The original removal of Daniel H. from his natural mother's home and later placement with the St. Dominic Defendants, however, was pursuant to an order of the Family Court. *See* Reply Memo at 10; Defendants' Memo at 22. Under such facts, the St. Dominic Defendants' actions were objectively reasonable; Daniel H.'s Fourth Amendment rights were not violated.

### 3. *Substantive Due Process*

Plaintiffs claim that Daniel H. had "a Substantive Due Process right to be free from harm" (*see* Plaintiff's Memo at 13); that "the St. Dominic Defendants 'failed to protect' him and failed to provide basic services necessary to insure his reasonable safety, including adequate medical care to keep him free from both psychological and physical harm" (*id.* at 14); and that "DANIEL H. suffered multiple physical and severe psychological injuries because of the acts and omissions of the ST. DOMINIC'S DEFENDANTS." *Id.* at 15. Plaintiffs further argue that inquiry on this claim is guided by whether there has been a substantial departure by the St. Dominic Defendants from accepted professional judgment. *See id.* at 15–17. In support of their motion, the St. Dominic Defendants have argued that the alleged facts fail to meet the higher, proper standard of deliberate indifference. *See* Defendants' Memo at 2, 4, 5, 15–19; Reply Memo at 8. The Court now turns to consider the appropriate standard.

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the United States Supreme Court concluded that deliberate indifference to a prisoner's serious medical needs states a cause of action under Section 1983. Several years later, the Supreme Court considered the security of involuntarily committed mental patients and held that liability may be imposed only when a decision by an appropriate professional "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *See Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 193, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court considered whether a State was liable "by failing to intervene to protect [a child] against a risk of violence at his father's hands of which they knew or

should have known." While the Court concluded that a State's failure to protect an individual against private violence did not amount to a Due Process violation, it observed that "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause...." *Id.* at 200, 109 S.Ct. 998. Significantly, and particularly relevant to the facts and issue before this Court, the Supreme Court stated:

> Had the State by the affirmative exercise of its power removed [the child] from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Court of Appeals have held, by analogy to Estelle and Youngberg, that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents. *See Doe v. New York City Dept. of Social Services*, 649 F.2d 134, 141–142 (C.A.2 1981) (other citations omitted). We express no view on the validity of this analogy, however, as it is not before us in the present case.

*Id.* at 201, n. 9, 109 S.Ct. 998.

In *Doe*, 649 F.2d 134, which was decided before *Youngberg* and *DeShaney*, the Second Circuit applied the deliberate indifference standard to a Section 1983 claim when a state agency placed a foster child in a foster home. Under the *Doe* approach, plaintiffs here must demonstrate that "omissions must have been a substantial factor leading to the denial of a constitutionally protected liberty or property interest" and that the St. Dominic Defendants "displayed a mental state of 'deliberate indifference.'" *Id.* at 141. Accordingly, the St. Dominic Defendants may be found liable if they have "exhibited deliberate indifference to a known inju-

ry, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." *Id.* at 145.

▪ Because *Doe* has not been overturned by the Supreme Court and still appears to set forth the relevant standard (*see Mosher–Simons v. County of Allegany, New York*, 159 F.3d 1347, 1998 WL 537526 (2d Cir.1998) (summary disposition); *Vogelsang v. County of Cayuga*, No. 95 Civ. 1123, 1998 WL 146293 (N.D.N.Y. March, 25, 1998) (Pooler, J.)), the Court adopts the more rigorous constitutional standard and concludes that the St. Dominic Defendants must have displayed a mental state of deliberate indifference in order to be liable under Section 1983. While the Court has resolved ambiguities and has drawn all reasonable inferences in favor of plaintiffs (*see* Plaintiffs' Memo at 13–17), the Court does not find in the present record evidence demonstrating that the St. Dominic Defendants were deliberately indifferent to Daniel H.'s welfare. Accordingly, the Court grants summary judgment to the St. Dominic Defendants on this portion of the Ninth Claim.

### 4. *Procedural Due Process*

Plaintiffs argue that Daniel H. had a right "to have his father notified of his whereabouts" (*see* Plaintiff's Memo at 2 n. 1) and that Hardaway H. had a right to be notified that Daniel H. was placed in foster care and the subject of a child abuse and neglect proceeding so that "he could attend court, visit with or obtain the return of his child, or protect him from the physical and psychological injuries the infant suffered while in foster care." *Id.* at 1; *see id.* at 5–6, 10. Thus, plaintiffs claim that the St. Dominic Defendants "deprived father and son to their liberty interest to each other, without following constitutionally adequate procedures." *Id.* at 7.

The St. Dominic Defendants argue that plaintiffs have not demonstrated that they

failed to take adequate procedural safeguards to secure Daniel H.'s constitutional rights or utilized constitutionally inadequate procedures. *See* Defendants' Memo at 19–20. The St. Dominic Defendants further argue that Daniel H.'s initial removal from his mother was pursuant to court order; that his placement with the St. Dominic Defendants was in accordance with the court order; and that the St. Dominic Defendants "performed diligent searches to locate Daniel H. on three separate occasions, including one within six-months of Daniel's original placement." *See* Defendants' Memo at 20.

▮ A parent has a constitutionally protected liberty interest in the custody of his child. *See Stanley v. Illinois,* 405 U.S. 645, 651–52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In order to state a claim for the violation of procedural due process, plaintiffs must allege that the St. Dominic Defendants deprived them of a protected liberty interest without following constitutionally adequate procedures. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Due process requires that the state procedures provide the parent an opportunity to be heard at a "meaningful time and in a meaningful manner." *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In the case of an emergency removal of a child from a parent without a hearing, "due process requires that the state procedures provide the parent an opportunity to be heard at a reasonably prompt time after the removal." *See Gottlieb v. County of Orange,* 84 F.3d 511, 520 (2d Cir.1996).

▮ Plaintiffs claim that Daniel H. was removed from custody without proper procedural safeguards being afforded to them. Issues of fact regarding this procedural complaint include, but are not limited to, whether and to what extent the St. Dominic Defendants actually attempted to locate and notify Hardaway H. after Daniel H.'s 1991 removal from his mother and prior to his eventual reunion with his father in 1995; to what extent the St. Dominic Defendants were acting under emergency conditions; and whether Hardaway H. abandoned Daniel H. thereby affecting the required notice. The St. Dominic Defendants' claims of organizing a "Diligent Search function ... to locate non-respondent birth parents" (*see* Affidavit of Bonni Rucker, sworn to June 12, 1999, ¶ 10) and of conducting "diligent searches for Hardaway H. on three occasions" (Defendants' Memo at 4) are in sharp contrast to Hardaway H.'s claims that the St. Dominic Defendants advised his son that he was dead when he was, in fact, "easy to find," given his unusual name, continuous Queens telephone listing and address, driver's license, Taxi and Limousine Commission license and regular employment and payment of taxes. *See* Plaintiffs' Memo at 8–9. This conflict in material facts precludes granting summary judgment to the St. Dominic Defendants on this claim.

## CONCLUSION AND ORDER

For the foregoing reasons, the St. Dominic Defendants motion for summary judgment is granted in part and denied in part. Accordingly, it is hereby

**ORDERED** that the St. Dominic Defendants' motion for summary judgment is granted as to the fifth and sixth claims in the complaint; and it is further

**ORDERED** that the St. Dominic Defendants' motion for summary judgment is granted only as to the equal protection, Fourth Amendment and Substantive Due Process claims contained in the ninth claim of the complaint; and it is further

**ORDERED** that the St. Dominic Defendants' motion is denied as to the Procedural Due Process claim in the ninth claim of the complaint; and it is finally

**ORDERED** that all parties are to appear for a final pre-trial conference with the Court on October 6, 2000 at 9:00 a.m.